OPINION
{¶ 1} Defendant-appellant, Thomas K. Woodson, appeals from his conviction of one count of kidnapping, in violation of R.C.2905.01; one count of aggravated robbery, in violation of R.C.2911.02; two counts of robbery, in violation of R.C. 2911.02; and one count of felonious assault, in violation of R.C. 2903.11. For the following reasons, we affirm.
 {¶ 2} On November 28, 2000, Abrahim Mohamid was shot and robbed as he worked as a clerk at the Wash and Shop Laundromat ("Wash and Shop") on Grandville Street in Columbus, Ohio. Almost eight months later, defendant was indicted for this crime.
 {¶ 3} At a jury trial, Mohamid testified that at 7:30 p.m. on November 28, 2000, defendant and co-defendant, Adonis Washington, entered the Wash and Shop. Defendant ran up to the counter where Mohamid was standing, brandishing a gun. Washington remained standing near the door. Defendant ordered Mohamid to open the cash register, empty his pockets and put all the money on the counter. After Mohamid complied, defendant stated that he was dissatisfied with the amount of cash and he needed more. Mohamid told defendant that he had just paid the soda and snack vendors and that the store owner had recently collected money for a bank deposit. Terrified of the gun pointed at him, Mohamid offered defendant the Wash and Shop's supply of cigarettes. Replying that "we are not joking," defendant shot Mohamid in the chest.
 {¶ 4} Mohamid fell to the ground behind the counter, seriously wounded. Defendant came behind the counter and searched through the cabinets under the counter. Defendant then grabbed the cash from the counter and left.
 {¶ 5} Mohamid, left lying behind the counter, remembered he had a hand-held silent alarm in his pocket, and pushed the button to summon the police. Both police officers and an ambulance arrived. As the emergency medical technicians carried Mohamid to the ambulance, he saw Washington and he told the police officers that Washington knew who shot him.
 {¶ 6} In exchange for a plea to one count of robbery, Washington testified against defendant at trial. Washington claimed that defendant approached him with the idea to rob the Wash and Shop, and Washington agreed to act as the lookout. Washington testified that defendant approached the counter and told Mohamid that he wanted to purchase cigarettes. As Mohamid turned to get the cigarettes, defendant pulled a .38 caliber and ordered Mohamid to empty the cash register. While Mohamid was putting the cash on the counter, defendant shot him. Defendant then searched Mohamid for money, grabbed the money from the counter and left the store with Washington. When Washington asked defendant why he shot Mohamid, defendant answered that it looked like Mohamid was reaching for a gun.
 {¶ 7} Defendant and Washington split up soon after leaving the store, and Washington went to a nearby recreation center. However, Washington began feeling guilty and returned to the store. He found Mohamid bleeding badly and called 911. Washington remained in the store with Mohamid and talked with the police officers when they arrived. Washington testified that he lied to the police officers by telling them a man named "Rick" had shot and robbed Mohamid.
 {¶ 8} James Porter, a detective with the Columbus Division of Police ("Columbus Police"), testified that when he spoke with Washington on November 28, 2000, Washington neither acknowledged that he was involved with the robbery and shooting nor mentioned defendant. However, after doing some investigation, Detective Porter surmised that both defendant and Washington were the perpetrators of the robbery and shooting. Detective Porter created two photographic arrays, one that included defendant and one that included Washington. Detective Porter then went to the hospital to show Mohamid the arrays. Upon viewing the arrays, Mohamid immediately selected defendant as the person who shot and robbed him and Washington as the lookout.
 {¶ 9} Once Detective Porter obtained Mohamid's positive identification of defendant and Washington, he again interviewed Washington. During this second interview, Washington admitted his involvement with the robbery and identified defendant as the person who shot and robbed Mohamid. The Columbus Police then arrested defendant, and he was indicted on one count of kidnapping, one count of aggravated robbery, two counts of robbery, one count of attempted aggravated murder, and one count of felonious assault. Each count included a gun specification.
 {¶ 10} Prior to his trial, defendant filed two demands for discovery, both of which requested that the state disclose any written or recorded statements made by any codefendant. Although the state responded to these requests by disclosing a videotape of Washington's statement to the Columbus Police, the state did not disclose the recording of the 911 call Washington made from the Wash and Shop.
 {¶ 11} At trial, defendant specifically requested that the state provide him with a copy of the 911 recording. After requesting the recording from the Columbus Police, the state learned that it is the Columbus Police's policy to recycle the discs on which 911 calls are recorded after two years. Sergeant Kevin Justice, the Audio Records Sergeant for the Columbus Police Communications Bureau, testified to this policy, as well as the fact that the Columbus Police had followed this policy in recycling the disc that contained the recording of Washington's November 28, 2000 emergency call before defendant and state requested the recording in January 2003.
 {¶ 12} Although the Columbus Police had destroyed the actual recording, it retained the incident report generated by the operator who took Washington's call. The incident report, which was introduced into evidence, indicated that:
A Male has been shot in his side[.] 24 is going[.] the person who shot him is not there[.]
Sergeant Justice testified that operators record pertinent comments a 911 caller makes, such as the comments in the report of Washington's call, to aid the dispatcher and officers that respond to the scene.
 {¶ 13} After deliberating, the jury found defendant guilty of kidnapping, aggravated robbery, robbery, and felonious assault. The trial court then sentenced defendant to a total term of 21 years of imprisonment.
 {¶ 14} On appeal, defendant assigns the following errors:
[1.] The defendant was denied a fair trial in violation of his right to due process of law when the court failed to instruct the jury regarding accomplice testimony as required by R.C. §2923.03(D), and defense counsel failed to object to the lack of said instruction.
[2.] The defendant was denied a fair trial in violation of his right to due process of law when the state failed to disclose to the defendant the recording of the codefendant's call to 911, the state failed to preserve that recording. And defense counsel failed to obtain that recording.
 {¶ 15} By his first assignment of error, defendant argues that the trial court erred when it did not give the jury the accomplice instruction that R.C. 2923.03(D) states is required whenever an alleged accomplice testifies against a defendant. Defendant argues that the trial court's failure to so instruct the jury in the instant case amounts to plain error and defense counsel's failure to object to the omission of the instruction amounts to ineffective assistance of counsel. We disagree with both arguments.
 {¶ 16} First, defendant acknowledges that because he did not object to the omission of the accomplice instruction, we must review the trial court's decision under the plain error standard. See Crim.R. 52(B) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.") See, also, State v. Hill (2001),92 Ohio St.3d 191, 196. In order to find plain error, an appellate court must determine that the outcome of the trial clearly would have been different but for the trial court's improper actions.State v. Waddell (1996), 75 Ohio St.3d 163, 166. However, even if an appellate court finds plain error, it is not required to correct it. State v. Barnes (2002), 94 Ohio St.3d 21, 27. Indeed, plain error should be noticed and corrected "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long
(1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 17} If an alleged accomplice of a defendant testifies against that defendant, the trial court, when it charges the jury, must "state substantially," that:
The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.
R.C. 2329.03(D). The legislative purpose of R.C. 2329.03(D) is to alert juries of the potentially self-serving motivation behind an accomplice's testimony in a strong and uniform manner. Statev. Ramsey, Cuyahoga App. No. 83026, 2004-Ohio-3618, at ¶ 49, quoting State v. Williams (1996), 117 Ohio App.3d 488, 495. In order to implement this purpose, trial courts must comply with R.C. 2923.03(D) and "are not in a position to ignore [the statutory] directive." State v. Crawford, Franklin App. No. 01AP-1428, 2003-Ohio-1447, quoting Williams, at 495. However, despite the mandatory nature of R.C. 2923.03(D), the statute only requires substantial, not strict, compliance. State v.Christian (Jan. 13, 2000), Jefferson App. No. 96-JE-42 ("R.C.2923.03[D] expressly permits substantial compliance with the accomplice testimony instruction. Therefore, a trial court does not commit error if it does not literally comply with the statute."); State v. Manley (Jan. 21, 1997), Columbiana App. No. 95-CO-53 ("We read [R.C. 2923.03(D)] as not requiring the instruction to be read verbatim * * *").
 {¶ 18} Applying this law, Ohio courts generally look to three factors to determine whether a trial court's failure to give the accomplice instruction constitutes plain error: (1) whether the accomplice's testimony was corroborated by other evidence introduced at trial; (2) whether the jury was aware from the accomplice's testimony that he benefited from agreeing to testify against the defendant; and/or (3) whether the jury was instructed generally regarding its duty to evaluate the credibility of the witnesses and its province to determine what testimony is worthy of belief. See State v. Olverson, Franklin App. No. 02AP-554, 2003-Ohio-1274, at ¶ 55; State v. Mitchell, Clark App. No. 2001 CA 29, 2002-Ohio-2061, at ¶ 10-11; State v. Hinkston (Sept. 29, 2000), Hamilton App. No. C-000024; State v. Cardwell (Sept. 2, 1999), Cuyahoga App. No. 74496; State v. Wilson (July 13, 1998), Hamilton App. No. C-970397; State v. King (Oct. 13, 1994), Cuyahoga App. No. 65511. These courts have concluded that if the first factor and one other factor are present, the absence of the accomplice instruction will not affect the outcome of the case.
 {¶ 19} In the case at bar, not only was Washington's testimony corroborated but, also, the jury was aware that Washington accepted a plea in exchange for his testimony and that it had the authority to disvalue any witness' testimony based upon bias. First, the state presented evidence, namely Mohamid's identification testimony, that corroborated Washington's testimony and supported defendant's conviction. Indeed, Mohamid testified he was "one-hundred percent" sure that defendant was the individual who shot and robbed him. Second, defense counsel cross-examined Washington about the benefit he received from agreeing to testify against defendant. Through this cross-examination, the jury was told that, in exchange for his testimony, Washington was convicted of only one of six felony counts and sentenced to a reduced prison term. Additionally, the plea agreement itself was introduced into evidence. Finally, the jury was instructed that it was the sole judge of the credibility of the witnesses, and that it could give each witness' testimony the weight it deemed proper, taking into consideration such matters as "interest and bias."
 {¶ 20} Accordingly, under the facts of this case, we conclude that the outcome of this trial would have been no different even if the trial court had given the accomplice instruction. Thus, we conclude that the failure to give the instruction was not plain error.
 {¶ 21} As we stated above, defendant also argues that reversal of his conviction is warranted because his counsel's failure to object to the omission of the accomplice instruction constituted ineffective assistance of counsel. In order to achieve a reversal of his conviction on ineffective assistance grounds, a defendant must show, first, that "counsel's performance was deficient" and, second, that "the deficient performance prejudiced the defense * * * so * * * as to deprive the defendant of a fair trial." Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052. Deficient performance does not prejudice a defendant unless there is "`a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.'" State v. Hill (1996),75 Ohio St.3d 195, 211, quoting State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus.
 {¶ 22} In the case at bar, defendant cannot prevail upon his ineffective assistance argument because, as we stated above, we fail to see how the result of the trial would have been different even if the trial court had given the accomplice instruction. Therefore, as defendant cannot satisfy the second prong of the ineffective assistance test, we conclude that a reversal on that ground is not warranted.
 {¶ 23} Accordingly, as defendant cannot prevail under either the plain error or ineffective assistance tests, we overrule defendant's first assignment of error.
 {¶ 24} By defendant's second assignment of error, he argues that the trial court erred in failing to grant a mistrial when it became apparent that the Columbus Police had erased the recording of Washington's 911 call. Defendant argues that the state's failure to disclose the recording in response to his discovery demand violated his due process rights. We disagree.
 {¶ 25} Both federal and Ohio courts hold that "`suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" State v. Treesh (2001),90 Ohio St.3d 460, 475, quoting Brady v. Maryland (1963),373 U.S. 83, 87, 83 S.Ct. 1194. In other words, when the state fails to disclose material exculpatory evidence requested by a defendant, the state violates that defendant's due process rights regardless of whether the state's inaction stems from good or bad faith. Exculpatory evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Statev. Johnson (1988), 39 Ohio St.3d 48, paragraph five of the syllabus, following United States v. Bagley (1985),473 U.S. 667, 105 S.Ct. 3375. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id.
 {¶ 26} In cases in which the evidence a defendant requests is permanently lost, "courts face the treacherous task of divining the import [i.e., materiality] of materials whose contents are unknown and, very often, disputed." California v. Trombetta
(1984), 467 U.S. 479, 487, 104 S.Ct. 2528. In such cases, if the defendant cannot demonstrate that the lost evidence is materially exculpatory, then, to establish a due process violation, the defendant must demonstrate that the state lost or destroyed the evidence in bad faith. Illinois v. Fisher (2004), 540 U.S. 544,124 S.Ct. 1200; Treesh, supra, at 475, quoting Arizona v.Youngblood (1988), 488 U.S. 51, 58, 109 S.Ct. 333. See, also,State v. Beliveau (Oct. 25, 2001), Franklin App. No. 01AP-211;State v. Brust (Mar. 28, 2000), Franklin App. No. 99AP-509;State v. Jones (June 11, 1998), Franklin App. No. 97APA08-1105. Stated differently, if evidence is not materially exculpatory, but only "potentially useful," the state's failure to preserve it does not violate due process unless a defendant can show bad faith on the state's part. Fisher, supra. Courts require proof of bad faith in the absence of proof that the evidence was materially exculpatory because the bad faith requirement:
* * * both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.
Youngblood, supra, at 58.
 {¶ 27} In the case at bar, defendant argues that the recording of Washington's 911 call is materially exculpatory because Washington could have identified someone other than defendant as the shooter during the call. However, defendant's supposition is unlikely given that the incident record includes neither the name nor description of the shooter. As the incident report lacks this pertinent information, it is more likely that Washington did not identify anyone as the shooter during the call. Furthermore, even if Washington had named another person as the shooter, the recording would still not qualify as material exculpatory evidence because Washington admitted that he lied to the responding police officers regarding the shooter's identity. As the jury was already aware of Washington's early attempt to misdirect the police away from defendant, further evidence of this attempt would not have changed the outcome of the trial.
 {¶ 28} Because defendant can only demonstrate that the 911 recording would have been potentially useful evidence, in order to establish a due process violation, defendant must demonstrate that the Columbus Police destroyed the recording in bad faith. However, as we stated above, the Columbus Police recycled the disc containing the recording pursuant to established policy. Thus, defendant cannot demonstrate bad faith. See James v.Singletary (C.A.11, 1992), 957 F.2d 1562, 1568, fn. 4 (no bad faith on the part of either the prosecution or the police when the tape of a 911 call was destroyed in accordance with standard procedures). Consequently, we conclude that the destruction of the 911 recording did not violate defendant's due process rights.
 {¶ 29} Defendant, however, disputes this conclusion, arguing that the state, not he, has the burden of proving the exculpatory value of the 911 recording. Defendant asserts that because the state failed to show the recording was not materially exculpatory, we should dismiss the charges against defendant.
 {¶ 30} Defendant bases his argument upon Columbus v. Forest
(1987), 36 Ohio App.3d 169, in which we recognized that the state has a constitutional duty to respond in good faith to a defense request to preserve specific items of evidence. We further held that if the state breaches this duty, then the state has the burden to prove that the evidence is not materially exculpatory. Id. at 173. If the state fails to meet this burden, and the defendant can show that it cannot obtain the evidence through alternative channels, then dismissal of the charges may be warranted. Id.
 {¶ 31} Notably, the rule articulated in Forest is only applicable if a defendant requested a specific item of evidence prior to the destruction of that evidence. State v. Groce
(1991), 72 Ohio App.3d 399, 402 ("The burden-shifting remedy ofForest has limited application * * *.). See, also, State v.Acosta, Hamilton App. No. C-020767, 2003-Ohio-6503, at ¶ 7 (Forest held distinguishable because in Forest "defendant made an immediate, specific request for discovery and/or preservation of the evidence in question, which the state ignored"); State v. Tarleton, Harrison App. No. 02-HA-541, 2003-Ohio-3492, at ¶ 22 (same). Here, defendant only made a general discovery request prior to the destruction of the 911 recording. Although defendant eventually made a specific request for the 911 recording, he only did so after the Columbus Police had recycled the recording. Thus, we conclude that defendant's reliance upon Forest is misplaced.
 {¶ 32} Finally, defendant argues that if we conclude that defense counsel's failure to timely request the 911 recording prevented defendant from establishing a violation of his due process rights, then we should find that defendant was denied effective assistance of counsel. As we have not reached the predicate conclusion necessary to reach the defendant's ineffective assistance argument, we find this argument moot.
 {¶ 33} Accordingly, we overrule defendant's second assignment of error.
 {¶ 34} For the foregoing reasons, we overrule defendant's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Bowman and Deshler, JJ., concur.
Deshler, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.