OPINION
{¶ 1} Appellant, Brian E. Bentley, appeals from the July 1, 2004 judgment entry of the Portage County Court of Common Pleas, in which he was sentenced for complicity to aggravated trafficking in drugs and complicity to trafficking in cocaine.
 {¶ 2} On September 27, 2002, appellant was indicted by the Portage County Grand Jury on one count of complicity to aggravated trafficking in drugs (i.e. ecstasy), a felony of the third degree, in violation of R.C.2923.03 and R.C. 2925.03(A) and (C)(1)(c), and one count of complicity to trafficking in cocaine, a felony of the third degree, in violation of R.C. 2923.03 and R.C. 2925.03(A) and (C)(4)(d). Appellant entered a plea of not guilty at his arraignment on September 27, 2002.
 {¶ 3} A jury trial commenced on August 27, 2003, which resulted in a mistrial because the jury was unable to reach a verdict. The case was retried before a jury on May 18, 2004. The jury returned a verdict of guilty on both counts on May 20, 2004.
 {¶ 4} The facts at trial revealed the following: Michael L. Rhodes ("Rhodes") testified for appellee, the state of Ohio, that in September 2002, he worked with the Western Portage County Drug Task Force ("Task Force") as an informant. In September 2002, Rhodes attended a party with his friend Brian.[1] Rhodes indicated that Rebecca Braverman ("Braverman") handed out her phone number to Brian, for Brian to contact either her or her boyfriend, Steve Payne ("Payne"), if he was interested in purchasing drugs. Rhodes obtained Braverman's phone number from Brian, and a few days later, called Braverman in the presence of Officer Paul Fafrak ("Officer Fafrak"), a detective with the Kent Police Department. Ultimately, Rhodes set up a drug deal with Braverman and/or Payne.
 {¶ 5} According to Braverman, who testified for appellee, she entered a plea of guilty with respect to this matter. Braverman stated that she gave her phone number to Brian, who she thought was a friend of appellant's, at a party in September 2002. Braverman indicated that Brian contacted her on the phone, wanting to purchase marijuana, and she gave him Payne's phone number. On September 25, 2002, Braverman, Payne, Michael Slusher ("Slusher"), and appellant, drove from Cleveland to Kent to sell ecstasy and cocaine with the understanding that the proceeds from the sale would be spilt three ways because Braverman did not need money at that time. While driving to Kent, Braverman said that Slusher had a bag of cocaine, which appellant held, and Slusher put Anbesol on it in order to cut it. Braverman testified that she and Payne dropped off Slusher and appellant, who had the drugs on them, at a Taco Bell before proceeding to Terrace Hall at Kent State University.
 {¶ 6} Meanwhile, Rhodes and Officer Fafrak were waiting outside the dormitory. Rhodes testified that he received a phone call and gave directions to his location.[2] Eventually, Payne and Braverman arrived and there was a brief conversation between the four about whether Rhodes and Officer Fafrak were police officers. After Rhodes told Payne and Braverman that they were not cops, the four then discussed where they should do the "buy." Rhodes stated that Payne and Braverman did not have the drugs with them. Although Officer Fafrak indicated that he and Rhodes showed Payne and Braverman money, Braverman stated that no money was produced at that time. Officer Fafrak also said that Payne and Braverman wanted him and Rhodes to get into the car but they refused. Officer Fafrak maintained that Payne and Braverman said that they would be right back and drove away.
 {¶ 7} Payne and Braverman picked up Slusher and appellant and returned to the dormitory about four minutes later. Officer Fafrak and Rhodes asked the four of them to come into the dorm room to make the exchange and they complied. Inside the dorm room, Rhodes and Braverman testified that Payne handed a bag of cocaine to Officer Fafrak.[3] Officer Fafrak examined the cocaine and claimed that it was fake because it looked so white. According to Rhodes and Officer Fafrak, appellant said that his stuff was not fake and that it was pure and uncut and that is why it was so white. Rhodes and Officer Fafrak said that appellant told them that if they did not want the cocaine, they would take it back. Officer Fafrak looked at the cocaine again and said that it was okay.
 {¶ 8} Payne next pulled out a bag of twenty-four ecstasy pills and handed it to Officer Fafrak, who held them up to the lights. Rhodes and Officer Fafrak stated that appellant showed them the markings on the pills and assured them that the pills were not fake. According to Braverman's testimony, she did not remember anything that appellant said in the dorm room. However, Braverman stated that appellant was involved in the transaction along with Payne. Also, Braverman indicated that the cocaine was snorted or tasted by either Rhodes or Officer Fafrak.
 {¶ 9} Rhodes and Officer Fafrak both handed money totaling $500 to Payne and discussed future arrangements with appellant. Rhodes and Officer Fafrak testified that appellant agreed to meet them in the future with the stipulation that they meet closer to Streetsboro. Appellant, Payne, Braverman, and Slusher were then placed under arrest.
 {¶ 10} Patricia Wain ("Wain"), a police officer with the city of Streetsboro Police Department assigned to the Task Force, testified that on September 25, 2002, she monitored Officer Fafrak during the drug transaction. Wain maintained that she monitored the dorm room and heard a male voice say that the cocaine and ecstasy were not fake.
 {¶ 11} Also, following appellant's arrest, Abby Slutsky ("Slutsky"), a student reporter for the Daily Kent Stater, interviewed appellant, his father, Philip Bentley, and Payne. The interview was recorded, and the tape was played for the jury at trial. Slutsky testified that from their conversation, appellant's and Payne's purpose was to go to Kent on the night at issue to sell drugs.
 {¶ 12} Philip Bentley stated at trial that during the taped interview with Slutsky, he said that "[t]hese boys didn't deny taking the drugs down [to Kent.]" Philip Bentley indicated that appellant was present in the car when the drugs were transported from Cleveland to Kent. Philip Bentley maintained that on the way to Kent, appellant tried to talk Payne out of selling drugs.
 {¶ 13} Pursuant to its July 1, 2004 judgment entry, the trial court sentenced appellant to one year for each offense, to run concurrently. The trial court indicated that appellant shall receive credit for forty-two days and assessed the minimum mandatory drug fine of $5,000 for each offense, which shall be concurrent to one another and the costs of the proceedings. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 14} "[1.] The trial court erred to the prejudice of [appellant] by restricting cross-examination of the state's witnesses, in violation of his right to confrontation guaranteed by the Sixth and Fourteenth
Amendments to the United States Constitution and Article I, Section 10
of the Ohio Constitution.
 {¶ 15} "[2.] The trial court erred to the prejudice of [appellant] in denying his requested jury instruction.
 {¶ 16} "[3.] The trial court erred to the prejudice of [appellant] by not giving the mandatory jury instruction contained in R.C. [2923.03(D)] regarding accomplice testimony."
 {¶ 17} In his first assignment of error, appellant argues that the trial court erred by restricting cross-examination of appellee's witnesses, in violation of his right to confrontation guaranteed by theSixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution. Appellant presents two issues for review. In his first issue, appellant alleges that favorable treatment extended to a paid informant, Rhodes, by appellee, directly relates to his bias and credibility and is a constitutionally protected area of inquiry on cross-examination. In his second issue, appellant contends that testimony regarding prior bad acts is admissible where it is directly at issue and in response to opinion evidence of the witness's character for truthfulness.
 {¶ 18} Because appellant's first and second issues are interrelated, we will address them in a consolidated manner.
 {¶ 19} The trial court has broad discretion in the admission and exclusion of evidence. State v. Hymore (1967), 9 Ohio St.2d 122, 128. An appellate court shall not disturb evidentiary rulings absent an abuse of discretion. Id. An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157.
 {¶ 20} This court stated in State v. Norwood (Mar. 22, 2002), 11th Dist. No. 2000-L-146, 2002 Ohio App. LEXIS 1325, at 6-7, that:
 {¶ 21} "[t]he Sixth Amendment to the U.S. Constitution and the Ohio Rules of Evidence guarantee the right of a criminal defendant to confront the witnesses against him for the biases they may hold. State v. Minier
(Sept. 28, 2001), [11th Dist.] No. 2000-P-0025, 2001 WL 1149461, at 1.
 {¶ 22} "A criminal defendant's right to confront and cross-examine a witness is not unlimited. Delaware v. Van Arsdall (1986), 475 U.S. 673, 679
* * *. A trial court retains `wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.' Id. Thus, `"the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."' Id., quoting Delaware v. Fensterer
(1985), 474 U.S. 15, 20 * * *. Furthermore, the `constitutional right to cross-examine adverse witnesses does not authorize defense counsel to disregard sound evidentiary rules.' State v. Amburgey (1987),33 Ohio St.3d 115, 117 * * *. While cross-examination itself is a matter of right, the extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court.State v. Green (1993), 66 Ohio St.3d 141, 147 * * *, citing Alford v.United States (1931), 282 U.S. 687, 691 * * *." (Emphasis sic.) (Parallel citations omitted.)
 {¶ 23} Evid.R. 405 deals with methods of proving character and provides that:
 {¶ 24} "(A) Reputation or opinion. — In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
 {¶ 25} "(B) Specific instances of conduct. — In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."
 {¶ 26} Evid.R. 608(B) concerns evidence of character and conduct of a witness and states that: "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."
 {¶ 27} "`Evid.R. 608(B) vests a trial court with discretion to allow cross-examination about specific instances of conduct of a witness "if clearly probative of truthfulness or untruthfulness."' * * *" Norwood,
supra, at 8, quoting State v. Brooks (1996), 75 Ohio St.3d 148, 151 * * *. "Thus, there is a requirement of a high degree of probative value of instances of prior conduct as to truthfulness or untruthfulness of the witness before the trial court will allow such cross-examination."Norwood at 8, citing Staff Notes to Evid.R. 608; State v. Williams
(1981), 1 Ohio App.3d 156, 157 * * *. (Parallel citations omitted.)
 {¶ 28} In the case at bar, prior to the cross-examination of Rhodes, defense counsel proffered that the identity of Rhodes was only revealed to them the day prior to the trial, and that Rhodes gave a social security number that was not his own. After conducting a background check, it was revealed that Rhodes had been charged with receiving stolen property on three separate occasions during 2001, and that each charge was dismissed by the state in 2001. Appellant's counsel requested permission from the court to question Rhodes as to the dismissed charges. However, the trial court denied defense counsel's request, indicating that the charges had not resulted in convictions and were prior to Rhodes's involvement in the present case.
 {¶ 29} We note that the trial court erred by not allowing the defense to inquire about Rhodes's potential bias with respect to whether he was afforded favorable treatment in exchange for his past and/or future cooperation with law enforcement. Rhodes's credibility and his regard for being truthful came into evidence through Officer Fafrak's testimony in which he testified in detail as to his background check of Rhodes, including his opinion of the latter's credibility.
 {¶ 30} Officer Fafrak testified on direct examination with respect to the various types of confidential informants. Officer Fafrak indicated that the police investigate the individual's background and if he or she is found to be legitimate, that person is given the opportunity to work with the police as an informant. Officer Fafrak stated that Rhodes had worked with the Task Force on numerous cases for the past four or five years. Officer Fafrak said that Rhodes initially contacted the Task Force because someone tried to sell his brother drugs and he was interested in helping to catch the seller. Officer Fafrak maintained that throughout the years, Rhodes had been an excellent informant, very reliable, and easy to control and work with.
 {¶ 31} On cross-examination, defense counsel attacked Rhodes's character when Officer Fafrak stated that he overheard a conversation where Rhodes suggested that he had real and fake social security numbers. After appellant's counsel asked whether the criminal history of a confidential informant was critical with respect to assisting the Task Force, Officer Fafrak said that it was and that he personally conducted a background check of Rhodes. Officer Fafrak determined that there was nothing in Rhodes's past that would hinder him from working with the Task Force, or that would affect him with regard to being truthful and honest and someone that he could work with. Officer Fafrak indicated that he did not consider an individual that had theft-related charges, which were dismissed, as something that would hinder his participation as an informant. Appellant's counsel asked Officer Fafrak if it was okay to be a thief and work for the Task Force. The trial court sustained appellee's objection. Officer Fafrak further revealed that Rhodes was a paid confidential informant and that he was not aware of any documentation of deals or other arrangements between Rhodes and the police or Task Force regarding Rhodes's criminal history.
 {¶ 32} As part of the general right to cross examine a witness, the Confrontation Clause gives a criminal defendant the specific right to question a witness as to possible sources of bias in his testimony.Norwood, supra, at 6; Davis v. Alaska (1974), 415 U.S. 308, 316. Precluding defense counsel from cross-examining Rhodes to the extent he wished does not require that he be given a new trial nor suggest that the trial court abused its discretion. See State v. Varner (Sept. 25, 1998), 11th Dist. No. 96-T-5581, 1998 Ohio App. LEXIS 4545, at 18. Based on the record, the significant evidence does not support the conclusion that the result here would have been different. State v. Haynes, 11th Dist. No. 2003-A-0055, 2004-Ohio-3514, at ¶ 16. Thus, this error was harmless at best. Appellant's first and second issues are not well-taken. Appellant's first assignment of error is without merit.
 {¶ 33} In his second assignment of error, appellant alleges that the trial court erred in denying his requested jury instruction. Appellant argues that the trial court abused its discretion by denying his request to provide the jury with a supplemental instruction following a jury question concerning aiding and abetting.
 {¶ 34} We stated in State v. Kirin (Aug. 11, 2000), 11th Dist. No. 99-T-0054, 2000 Ohio App. LEXIS 3661, at 7-10, that:
 {¶ 35} "[j]ury instructions should contain plain, unambiguous statements of the law applicable to the case and evidence presented to the jury. Marshall v. Gibson (1985), 19 Ohio St.3d 10, 12 * * *. The jury instructions provided by the trial court must be confined to the issues raised by the pleadings and the evidence. Becker v. Lake Cty. Mem. Hosp.W. (1990) 53 Ohio St.3d 202, 208 * * *. The trial court may not instruct a jury where there is no evidence to support a particular issue. Id. Additionally, `where, during the course of its deliberations, a jury requests further instruction, or clarification of instructions previously given, a trial court has discretion to determine its response to that request.' State v. Carter (1995), 72 Ohio St.3d 545 * * *, paragraph one of the syllabus * * *. Indeed, a reversal of a criminal conviction, based upon a trial court's response to such a request from the jury, requires a showing that the lower court committed an abuse of discretion. Id. at 553.
 {¶ 36} "* * *
 {¶ 37} "* * * [A] trial judge has broad discretion to answer a jury question with a supplemental instruction or direct the jury's attention to the correct jury instructions already provided." (Parallel citations omitted.)
 {¶ 38} In the instant matter, appellant was charged with complicity to aggravated trafficking in drugs and complicity to trafficking in cocaine.
 {¶ 39} R.C. 2923.03(A)(2) defines complicity and provides in part that: "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]"
 {¶ 40} The Supreme Court of Ohio held that with respect to aiding and abetting, "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." State v. Johnson (2001),93 Ohio St.3d 240, syllabus.
 {¶ 41} Here, the trial court stated to the jury that appellant is charged with one count of complicity to aggravated trafficking in drugs, and one count of complicity to trafficking in cocaine. With respect to count one, the trial court instructed the jury as follows:
 {¶ 42} "[n]ow, before you may find [appellant] guilty of that charge, you must find, beyond a reasonable doubt, that on or about September 25, 2002, in Portage County, Ohio, [appellant] did knowingly aide and abet [Payne] to knowingly sell ecstacy * * *.
 {¶ 43} "* * * To aide and abet means [appellant] supported, assisted, encouraged, cooperated with, advised or insighted [Payne] to knowingly sell ecstacy.
 {¶ 44} "To knowingly aide and abet means [appellant] was aware that he was aiding and abetting another to sell ecstacy.
 {¶ 45} "To knowingly sell means [appellant] — the seller was aware that he was selling drugs."
 {¶ 46} The trial court instructed the jury using the same foregoing language with respect to count two.
 {¶ 47} During deliberations, the jury asked the trial court for additional instructions on aiding and abetting. Appellant's counsel proffered a supplemental instruction "that knowledge of the transaction alone is not sufficient to support a conviction for aiding and abetting." The trial court declined to give any supplemental instructions and sent the jury instructions to the jury as previously given. Based on Kirin,
supra, the trial court used its broad discretion in declining to give any supplemental instructions, and did not abuse its discretion. Here, appellant failed to demonstrate that the trial court's instructions, without the requested supplemental instruction, allowed the jury to convict him based solely on his knowledge of the drug sales. Appellant's second assignment of error is without merit.
 {¶ 48} In his third assignment of error, appellant argues that the trial court erred and committed plain error by not giving the mandatory jury instruction contained in R.C. 2923.03(D) regarding accomplice testimony.
 {¶ 49} In State v. Breland, 11th Dist. No. 2003-A-0066, 2004-Ohio-7238, at ¶ 18-19, quoting State v. Gordon (Mar. 22, 1996), 11th Dist. No. 92-A-1696, 1996 Ohio App. LEXIS 1078, at 3-4, we stated that:
 {¶ 50} "`it is well established that "the failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would havebeen otherwise." * * * State v. Underwood (1983), 3 Ohio St.3d 12 * * *, syllabus, quoting State v. Long (1978), 53 Ohio St.2d 91 * * *; Crim.R. 52(B). Furthermore, "notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Long, paragraph three of the syllabus.'" (Emphasis sic.) (Parallel citations omitted.)
 {¶ 51} The Supreme Court of Ohio in State v. Barnes (2002),94 Ohio St.3d 21, 27, held that Crim.R. 52(B) places three limitations on a reviewing court's decision under a plain error analysis and stated that:
 {¶ 52} "[f]irst, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be `plain' within the meaning of Crim.R. 52(B), an error must be an `obvious' defect in the trial proceedings. * * * Third, the error must have affected `substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.
 {¶ 53} "Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court `may' notice plain forfeited errors; a court is not obliged to correct them. We have acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error `with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" (Citations omitted.)
 {¶ 54} R.C. 2923.03(D) provides that:
 {¶ 55} "[i]f an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
 {¶ 56} "`The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 {¶ 57} "`It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.'"
 {¶ 58} The legislative purpose of R.C. 2923.03(D) is to alert juries of the potentially self-serving motivation behind an accomplice's testimony. State v. Williams (1996), 117 Ohio App.3d 488, 495. "* * * [D]espite the mandatory nature of R.C. 2923.03(D), the statute only requires substantial, not strict, compliance." State v. Woodson, 10th Dist. No. 03AP-736, 2004-Ohio-5713, at ¶ 17. "Applying this law, Ohio courts generally look to three factors to determine whether a trial court's failure to give the accomplice instruction constitutes plain error: (1) whether the accomplice's testimony was corroborated by other evidence introduced at trial; (2) whether the jury was aware from the accomplice's testimony that he benefited from agreeing to testify against the defendant; and/or (3) whether the jury was instructed generally regarding its duty to evaluate the credibility of the witnesses and its province to determine what testimony is worthy of belief." Id. at ¶ 18.
 {¶ 59} In the case sub judice, the trial court provided the standard instructions to the jury regarding their duty to evaluate the credibility of the witnesses, indicating that they are the sole and exclusive judges of the facts; that they must weigh and judge the credibility of the testimony; and that within their function as determiners of credibility and fact, they can totally believe a witness's testimony, can totally disbelieve it, or can believe it in part and disbelieve it in part.
 {¶ 60} Braverman testified that on September 25, 2002, she, Payne, Slusher, and appellant, drove to Kent to sell ecstasy and cocaine. Again, after Payne and Braverman met with Rhodes and Officer Fafrak and determined that they wanted to purchase drugs, Payne and Braverman went to Taco Bell, where Slusher and appellant were previously dropped off, in order to pick up the drugs. Witness testimony revealed that appellant was present inside the dorm room during the transaction. Rhodes's and Officer Fafrak's testimony corroborated Braverman's testimony regarding appellant's conduct inside the room. All three stated that Payne physically handled the drugs and money, that appellant was actively involved in the negotiations, and that there was an exchange of money for ecstasy and cocaine.
 {¶ 61} Although the trial court failed to provide an accomplice instruction, the general jury instructions, including the lengthy instruction on credibility, were sufficient. Woodson, supra. In addition, based on Woodson, appellee provided testimony by other witnesses that corroborated Braverman's testimony. Appellant failed to demonstrate that but for the failure to provide the accomplice instruction, the outcome of his trial clearly would have been different. See Barnes, supra. Thus, appellant's third assignment of error is without merit.
 {¶ 62} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Portage County Court of Common Pleas is affirmed.
O'Neill, J., O'Toole, J., concur.
[1] Brian's surname was not contained in the record.
[2] Rhodes did not state who called him.
[3] The total amount of cocaine was 12.94 grams.