[Cite as *State v. Sims*, 2012-Ohio-238.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

State of Ohio,                                         :

    Plaintiff-Appellee,                      :
 
                                                         :      Case No. 10CA17

    v.                                                     :

                                                         :      <u>DECISION AND</u>
Travis Wade Sims,                               :      <u>JUDGMENT ENTRY</u>

                                                         :
    Defendant-Appellant.                    :      Filed:  January 9, 2012
_____

<u>APPEARANCES:</u>

Timothy Young, State Public Defender, and E. Kelly Mihocik, Assistant State Public Defender, Columbus, Ohio, for Appellant.

C. Jeffrey Adkins, Gallia County Prosecutor, and Pat Story, Gallia County Assistant Prosecutor, Gallipolis, Ohio, for Appellee.
_____

Kline, J.:

**{¶1}**    Travis Sims appeals the judgment of the Gallia County Court of Common Pleas.  After a jury trial, Sims was convicted of aggravated robbery.  Sims contends that, for various reasons, the trial court abused its discretion when it imposed a ten-year prison sentence on Sims.  Because the trial court used an element of Sims' offense to find Sims' conduct more serious for sentencing purposes, we agree.  Accordingly, we vacate Sims' sentence and remand this cause for resentencing.  Next, Sims contends that he was denied the opportunity for meaningful appellate review because the trial court did not state its justification for imposing the maximum possible sentence.  Because we vacated Sims' sentence, we find this issue moot.  Next, Sims contends that he received ineffective assistance of counsel because his trial counsel did not challenge

the trial court's imposition of a grossly disparate and disproportionate sentence. Again, because we vacated Sims' sentence, we find this issue moot. Next, Sims contends that the trial court erred because it imposed a six-month repayment period for Sims to repay court costs in its judgment entry but failed to inform Sims of the repayment period at his sentencing hearing. Because the trial court is not required to impose the repayment period at the sentencing hearing, we disagree. Finally, Sims contends that his conviction for aggravated robbery is against the manifest weight of the evidence. Because there was substantial evidence upon which the jury could have reasonably concluded that all the elements of Sims' aggravated robbery offense were proven beyond a reasonable doubt, we disagree.

{¶2} Accordingly, we affirm, in part, and reverse, in part, the judgment of the trial court.

I.

{¶3} On April 3, 2010, Sims visited Wal-Mart with his friend, Lee Bryan, and some other individuals. Shortly after entering the store, Sims separated from the others. Sims used a pocket knife to remove a wristwatch from its plastic packaging. Sims put the watch on his wrist, and Sims attempted to exit Wal-Mart without paying for the watch.

{¶4} Barney Mulnar was working as a loss prevention officer for Wal-Mart on the day in question. Mulnar was dressed in plainclothes, and he and his partner observed Sims' theft of the watch. Shortly after Sims passed the last point of sale, Mulnar confronted Sims. Mulnar testified that he identified himself to Sims as a Wal-Mart loss prevention officer. According to Mulnar, Sims seemed to cooperate for a

moment, but then Sims instigated an altercation with Mulnar. Sims punched Mulnar in the ear. Mulnar grabbed Sims during the struggle, and Sims' shirt ripped as a result. At some point, Sims swung his knife at Mulnar. Sims broke free of Mulnar, and Sims fled on foot across Wal-Mart's parking lot.

{¶5}     Bryan was exiting Wal-Mart with Sims, and Bryan witnessed Sims' altercation with Mulnar. Bryan claimed that Mulnar did not identify himself as a loss prevention officer. Bryan testified that he was unaware that Sims had stolen the watch, and Bryan thought that Mulnar was a stranger attacking Sims.

{¶6}     Bryan and Sims left Wal-Mart's parking lot in Bryan's car. A police officer initiated a traffic stop on Bryan's car shortly after the incident between Sims and Mulnar. Sims was in Bryan's car, and the police arrested Sims without incident. Sims cooperated with police, and he admitted that he stole the watch and some socks from Wal-Mart.

{¶7}     A grand jury indicted Sims for aggravated robbery, in violation of R.C. 2911.01(A)(1). At trial, the jury found Sims guilty, and the trial court sentenced Sims to ten years in prison, which was the maximum possible prison sentence for Sims' conviction.

{¶8}     Sims appeals and asserts the following assignments of error: I. "The trial court abused its discretion when it sentenced Mr. Sims to the maximum sentence for aggravated robbery based upon its finding that Mr. Sims brandished a knife while trying to flee." II. "The trial court foreclosed Mr. Sims's constitutional right to meaningful appellate review of his sentence by failing to state on the record its justification for imposing a ten-year maximum sentence." III. "Mr. Sims received the ineffective

assistance of trial counsel because his attorney did not challenge the court's imposition of the grossly disparate and disproportionate sentence that the trial court imposed on Mr. Sims." IV. "The sentencing entry ordered Mr. Sims to pay the costs of prosecution within six months of his release from prison. But the trial court did not notify Mr. Sims of that time limitation at his sentencing hearing. The trial court may not impose a sentence in a judgment entry that is different from the sentence which is imposed at the defendant's sentencing hearing." And, V. "The jury lost its way when it convicted Mr. Sims of aggravated robbery. There was no credible evidence that Mr. Sims was fleeing from a theft offense or that he brandished a deadly weapon while fleeing from a theft offense."

II.

{¶9}  In his first assignment of error, Sims argues that the trial court abused its discretion when it sentenced him to the maximum sentence allowed for an aggravated robbery conviction. Sims advances two arguments under this assignment of error: (1) he contends that the trial court used an element of Sims' aggravated robbery offense to justify finding the offense was more serious for sentencing purposes, and (2) he contends that his sentence imposes an unnecessary burden on the State of Ohio's resources.

{¶10}  "Appellate courts 'apply a two-step approach [to review a sentence]. First, [we] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard.'" *State v. Smith*, 4th Dist. No.

08CA6, 2009-Ohio-716, ¶ 8, quoting *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 4 (alterations in original).  "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."  *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶11}  In analyzing whether a sentence is contrary to law, "[t]he only specific guideline is that the sentence must be within the statutory range[.]"  *State v. Welch*, 4th Dist. No. 08CA29, 2009-Ohio-2655, ¶ 7, quoting *State v. Ross*, 4th Dist. No. 08CA872, 2009-Ohio-877, ¶ 10.  Here, the jury found Sims guilty of aggravated robbery, which is a first-degree felony.  *See* R.C. 2911.01(A) & (C).  Consequently, Sims faced up to ten years in prison.  *See* the former R.C. 2929.14(A)(1).  (The maximum prison sentence for a first-degree felony is now eleven years.  *See* the current R.C. 2929.14(A)(1), which became effective September 30, 2011.)  Thus, Sims' ten-year sentence was within the statutory range for Sims' aggravated robbery conviction.

{¶12}  Additionally, courts must consider the general guidance factors set forth in R.C. 2929.11 and 2929.12.  *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 42; *Kalish* at ¶ 13; *State v. Davis*, 189 Ohio App.3d 374, 2010-Ohio-3782, 938 N.E.2d 1043, ¶ 33.  In imposing Sims' sentence, the trial court stated that R.C. 2929.11 "and subsequent sections" guided the trial court with respect to the purposes and principles of sentencing.  Tr. at 287.  The trial court also stated that it "weighed the seriousness and the recidivism factors under [R.C.] 2929.12[.]"  Id. at 288.  As a result, we find that the trial court complied with all applicable rules and statutes in sentencing Sims.

**{¶13}** Therefore, we proceed to the second-prong of the analysis under *Kalish* to determine whether the trial court abused its discretion when it imposed its sentence upon Sims.

A.

**{¶14}** Sims argues that the trial court erred when it cited an element of Sims' offense (i.e., aggravated robbery) as a reason that the seriousness of the offense was elevated for sentencing purposes. At Sims' sentencing hearing, the trial court stated as follows:

The Court has also weighed the seriousness and the recidivism factors under Section 2929.12 of the Ohio Revised Code and would find under more serious factors * * * under relevant factors uh, indicating this conduct was more serious. *Uh, he did wield a knife at the uh, loss prevention officer at Wal-Mart and uh, who was the victim in this case and someone could have really been seriously injured in that situation.* This is a very serious crime, a felony of the fifth degree, or excuse me, the first degree as I indicated earlier. And pursuant to Section 2929.13(D) of the Ohio Revised Code there is a presumption in favor of prison. The Court does find after weighing the seriousness and recidivism factors that prison is consistent with the purposes and principles of sentencing and also that the offender is not amenable to and [sic] * * * available community sanction. So having said all of that Mr. Sims it's going to be the order and judgment of the Court that you be sentenced to a term of incarceration in a state penal facility for a term of uh, 10 years. (Emphasis added) Tr. at 288-289.

**{¶15}** Sims points to the trial court's statement that Sims "did wield a knife at * * * the victim * * * and someone could have really been seriously injured" to argue that the trial court used an element of Sims' crime to justify a harsher punishment. That is, Sims contends that the trial court determined that Sims' conduct was more serious for sentencing purposes based on the presence of a deadly weapon, which was a required element of the crime for which Sims was convicted. Therefore, Sims argues the trial court abused its discretion when it imposed Sims' prison sentence.

**{¶16}** "A trial court may not elevate the seriousness of an offense by pointing to a fact that is also an element of the offense itself." *State v. Davis*, 4th Dist. No. 09CA28, 2010-Ohio-555, ¶ 24, citing *State v. Schlecht*, 2d Dist. No. 2003-CA-3, 2003-Ohio-5336, ¶ 52. In *Davis*, the defendant was convicted of domestic violence, which required the state to prove that the defendant knowingly caused or attempted to cause physical harm to "a family or household member." *Davis* at ¶ 24, citing R.C. 2919.25(A). During sentencing, the trial court found the offense more serious for sentencing purposes because the defendant's relationship with the victim facilitated the offense. *Id.* The victim was the defendant's wife and the mother of his children. *Id.* at ¶ 25. And we determined that the victim did not "[have] any relationship beyond that required for his domestic violence conviction, i.e. [the victim] was [the defendant's] wife/mother of his children and lived with him." *Id.* We held that "[e]ven though [a trial court] has discretion in choosing an appropriate sentence, when a court considers an improper sentencing factor, it has committed an abuse of discretion. Thus, the trial court abused its discretion in finding that [the defendant's] relationship with his wife facilitated the domestic violence offense, causing it to be more serious than a normal act of domestic

violence." (Citation omitted) *Id.  See also Schlecht* at ¶ 52 ("Because a sale or offer to sell is part of the elements of the charged offense, the same conduct cannot also be an aggravating circumstance justifying a greater than minimum sentence."); *State v. Stroud*, 7th Dist. No. 07 MA 91, 2008-Ohio-3187, ¶ 52 ("The trial court found that Stroud committed the worst form of this offense, in part, because 'a life was taken' and did not explain how this was something more than an element of the offense.  This fact is present in every case where a court is sentencing an offender for a voluntary manslaughter and highlighting this fact does not show why this particular case is a more serious form of that offense."); *State v. Smith*, 8th Dist. No. 85245, 2005-Ohio-3836, ¶ 17-18 (holding that "the trial court's sentence * * * was improper" because "the trial court used the elements of the offense itself to enhance the penalty").

{¶17}  The jury found Sims guilty of aggravated robbery, in violation of R.C. 2911.01(A)(1), which provides as follows: "No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

{¶18}  Under the plain language of the statute, the offender must "[h]ave a deadly weapon on or about the offender's person or under the offender's control" in *every* aggravating robbery case.  *Id.  See also State v. Marshall*, 8th Dist. No. 87334, 2006-Ohio-6271, ¶ 35 ("Conviction for aggravated robbery * * * requires proof that the defendant *both possess a deadly weapon and* 'either display the weapon, brandish it,

indicate that the offender possesses it, or use it' while committing a theft offense.")

(emphasis added); *State v. Brown*, 3d Dist. No. 1-05-11, 2005-Ohio-6177, ¶ 7.

**{¶19}** Here, the trial court cited an element of Sims' offense to justify its finding

that the offense was of a more serious nature for sentencing purposes. Essentially, the

trial court found Sims' conduct more serious because Sims used a knife (i.e., a deadly

weapon) and someone could have been seriously injured. However, as indicated

above, the presence of a deadly weapon is required in *every* aggravated robbery case.

And whenever a deadly weapon is involved in any crime, someone could be seriously

injured. Thus, the trial court used an element of the offense to elevate the seriousness

of the offense during sentencing. Under the trial court's reasoning, the seriousness of

every aggravated robbery offense would automatically be elevated for sentencing

purposes. Consequently, because the trial court based its justification on an element of

the offense, the court abused its discretion when it found Sims' offense to be more

serious for sentencing purposes. *See Davis* at ¶ 25.

**{¶20}** Therefore, we sustain Sims' first assignment of error, and we vacate Sims'

sentence for aggravated robbery. Additionally, we remand this cause to the trial court

for resentencing.

B.

**{¶21}** Sims also argues that his ten-year prison sentence imposes an

unnecessary burden on the State of Ohio's resources. However, because we vacated

Sims' sentence, we find this issue moot. Therefore, we decline to address it. *See*

App.R. 12(A)(1)(c).

III.

**{¶22}** In his second assignment of error, Sims claims that the trial court denied him his constitutional right to meaningful appellate review because the trial court did not state its justification for imposing a maximum sentence on the record.  Because we vacated Sims' sentence, we find this issue moot.  Therefore, we decline to address it. *See* App.R. 12(A)(1)(c).

IV.

**{¶23}** In his third assignment of error, Sims claims that he received ineffective assistance of counsel because his trial counsel did not challenge the trial court's imposition of a grossly disparate and disproportionate sentence.  Again, because we vacated Sims' sentence, we find this issue moot.  Therefore, we decline to address it. *See* App.R. 12(A)(1)(c).

V.

**{¶24}** In his fourth assignment of error, Sims claims that the trial court erred because it did not inform Sims, at his sentencing hearing, that he had six-months following his incarceration to pay court costs in full.

**{¶25}** We review a trial court's imposition of a repayment schedule for court costs under an abuse of discretion standard.  *See State v. Gullett*, 4th Dist. No. 09CA4, 2010-Ohio-2785, ¶ 10.  "[A] trial court has the inherent power to set a deadline or a schedule for compliance with its own orders.  Thus the trial court could in its discretion create a timeline for [the defendant] to comply with its order directing him to pay his unpaid supervisory fees and court costs."  *Id.* at ¶ 9.

**{¶26}** The trial court's judgment entry orders Sims to "pay all costs of prosecution," and it requires Sims to "pay said costs in full within six (6) months after his

release from the correctional institution." Judgment Entry at 2-3. The trial court,
however, did not inform Sims of the six-month repayment period at Sims' sentencing
hearing. Therefore, Sims argues that the trial court must either (1) enter a nunc pro
tunc entry that does not impose a repayment schedule or (2) resentence Sims.

**{¶27}** Sims relies on *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926
N.E.2d 278, to argue that "because the [trial] court did not notify Mr. Sims that it would
require him to pay court costs within six months of his release, Mr. Sims did not have an
opportunity to object." Appellant's Brief at 19. According to Sims, "[a trial] court may
not include a sentence in its judgment entry that is different from the sentence
announced at the sentencing hearing, as the defendant is not present for the imposition
of the altered sentence." *Id.* Thus, Sims argues that imposition of a repayment period
in the judgment entry that was not imposed at the sentencing hearing constitutes an
altered sentence.

**{¶28}** Sims' reliance on *Joseph*, however, is misplaced. *Joseph* does not
support Sims' arguments (1) that he had a right to object to the trial court's repayment
schedule or (2) that imposition of the repayment schedule in the judgment entry, but not
at the sentencing hearing, constitutes an altered sentence. In *Joseph*, the trial court
imposed court costs on the defendant in its sentencing entry, but it failed to impose the
court costs during the sentencing hearing. *Joseph* at ¶ 1. The Court held that the
defendant suffered prejudice because the trial court denied him the opportunity to move
for a waiver of court costs on the grounds that the defendant was indigent. *Id.* at ¶ 22.

**{¶29}** The Court also noted, however, that "[court] costs are distinct from
criminal punishment." *Id.* at ¶ 20. This is because "[a]lthough costs in criminal cases

are assessed at sentencing and are included in the sentencing entry, costs are not punishment, but are more akin to a civil judgment for money." *Id.*, citing *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, ¶ 15. Thus, under *Joseph*, the improper imposition of court costs does not void a defendant's sentence (or even a portion of the sentence), as would be the case in the event of a sentencing error, such as the improper imposition of postrelease control. *See Id.* at ¶ 22; *see also Gullett*, 2010-Ohio-2785, at ¶ 11, citing *Joseph*. Accordingly, *Joseph* requires that a trial court provide a defendant the statutory right to move for a waiver of costs based on indigency under R.C. 2949.092. *Joseph*, however, does not require the trial court to provide the defendant an opportunity to object to the repayment schedule for court costs.

{¶30} At his sentencing hearing, Sims had the opportunity to move for a waiver of court costs based on indigency. Sims did not move for a waiver of court costs. Thus, the trial court provided Sims his statutory right to move for a waiver of costs under R.C. 2949.092. Additionally, court costs are not part of Sims' criminal punishment. *See Joseph* at ¶ 20. Therefore, the trial court's imposition of the repayment period in the judgment entry of conviction, but not at the sentencing hearing, does not constitute an "altered sentence." Consequently, the trial court did not abuse its discretion by including the six-month repayment period in Sims' judgment entry of conviction. This is so even though the trial court did not impose the repayment period during Sims' sentencing hearing.

{¶31} Accordingly, we overrule Sims' fourth assignment of error.

VI.

**{¶32}** In his fifth assignment of error, Sims claims that his conviction for aggravated robbery was against the manifest weight of the evidence.

**{¶33}** When determining whether a criminal conviction is against the manifest weight of the evidence, we "will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph two of the syllabus. *See also State v. Smith*, 4th Dist. No. 06CA7, 2007-Ohio-502, ¶ 41. We "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." *Smith* at ¶ 41, citing *State v. Garrow*, 103 Ohio App.3d 368, 370-71, 659 N.E.2d 814 (4th Dist.1995); *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175 (citations omitted). But "[o]n the trial of a case, * * * the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶34}** The jury found Sims guilty of aggravated robbery, in violation of R.C. 2911.01(A)(1). As stated above, that statute provides as follows: "No person, in attempting or committing a theft offense, * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under

the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

**{¶35}** Sims admitted that he committed a theft offense. Specifically, Sims told police that he stole a watch and socks from Wal-Mart.

**{¶36}** Sims argues that he was fleeing from an attacker, not a theft offense, when he exited Wal-Mart. Sims claims that he believed Mulnar was attacking him. Sims notes that Mulnar was dressed in plainclothes, and Sims asserts that Mulnar did not identify himself as a Wal-Mart loss-prevention officer when he confronted Sims. Several witnesses, however, testified to the contrary. Mulnar testified (1) that he identified himself as a loss-prevention officer and (2) that he told Sims he was stopping him about Sims' theft of the watch. Additionally, Brian Arthurs testified that he was waiting in his car near the location of Sims' altercation with Mulnar. Arthurs testified that he heard Mulnar identify himself as a Wal-Mart loss-prevention officer. Finally, Juanita Cropland worked with Mulnar as a loss-prevention officer on the day of the incident. Cropland testified that she and Mulnar maintained cell-phone contact as Mulnar approached Sims. Cropland testified that she overheard Mulnar identify himself as a loss-prevention officer immediately before the altercation between Mulnar and Sims. Consequently, there was substantial evidence that Sims was fleeing a theft offense, not an attacker, when Mulnar confronted Sims.

**{¶37}** Sims also disputes the evidence that he brandished a knife during his altercation with Mulnar. Mulnar testified that Sims swung a knife at him. Additionally, Arthurs testified that he witnessed the altercation as Sims and Mulnar emerged from just inside Wal-Mart into the parking lot area. Arthurs also testified that Sims used a

knife during Sims' altercation with Mulnar. Furthermore, the knife Sims used to cut the packaging of the watch was found in a pile of items Sims discarded on the ground as he ran from Mulnar. Mike Warren was another bystander who witnessed the altercation. And Warren testified that he found the knife immediately after Sims fled, and the knife was "open" when he found it. Tr. at 82.

{¶38} Sims asserts that Mulnar was prone to exaggeration based on Mulnar's testimony that the knife blade was four-inches long, when, in fact, the blade was two-inches long. Sims also points to the testimony of Bryan (i.e., Sims' friend). Bryan testified that Sims did not use a knife during the altercation with Mulnar. Sims' arguments, however, challenge the credibility of the state's witnesses. And, as stated above, credibility determinations are primarily for the trier of facts. *See DeHass* at paragraph one of the syllabus. Thus, there was substantial evidence that Sims brandished a deadly weapon (i.e., a knife) while fleeing a theft offense.

{¶39} For the foregoing reasons, there was substantial evidence upon which the jury could find the elements of Sims' aggravated robbery offense proven beyond a reasonable doubt. Consequently, Sims' aggravated robbery conviction is not against the manifest weight of the evidence.

{¶40} Accordingly, we overrule Sims' fifth assignment of error.

VII.

{¶41} In conclusion, we affirm, in part, and reverse, in part, the judgment of the trial court. Specifically, we sustain Sims' first assignment of error. Therefore, we (1) vacate Sims' sentence and (2) remand this cause for resentencing. Additionally, we conclude that Sims' second and third assignments of error are moot. Finally, we

overrule Sims' fourth and fifth assignments of error.  Accordingly, we remand this cause to the trial court for further proceedings consistent with this opinion.

**JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART AND CAUSE REMANDED.**

Harsha, P.J., dissenting in part:

**{¶42}** I agree with the principal opinion that the trial court had the inherent authority to include a payment schedule with its order to pay the court costs. But I conclude that Crim.R. 43(A) requires the court to advise the defendant of that schedule orally at the sentencing hearing. Thus, I would sustain the fourth assignment of error, vacate that portion of the defendant's sentence, and remand for either a resentencing hearing limited to that issue or the entry of a nunc pro tunc sentencing entry that deletes reference to a payment schedule.

**{¶43}** I concur in judgment and opinion in all other regards.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED, IN PART, AND REVERSED, IN PART, AND THE CAUSE BE REMANDED to the trial court for further proceedings consistent with this opinion.  Appellant and Appellee shall pay equally the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.


Abele, J.: Concurs in Judgment and Opinion.
Harsha, P.J.: Concurs in Part and Dissents in Part with Opinion.


For the Court


BY:_____
　　　Roger L. Kline, Judge


### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**