[Cite as *State v. Warren*, 2013-Ohio-3542.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | Case No. 12CA3324 |
| v. | : | |
| | : | <u>DECISION AND</u> |
| WAYNE WARREN, | : | <u>JUDGMENT ENTRY</u> |
| | : | |
| Defendant-Appellant. | : | Released: 08/14/2013 |

<u>APPEARANCES:</u>

Aaron M. McHenry, Benson, McHenry & Sesser, LLC, Chillicothe, Ohio, for Appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Jeffrey C. Marks, Assistant Prosecuting Attorney, for Appellee.

Hoover, J.

{¶1} This is an appeal of a conviction from the Common Pleas Court of Ross County. On March 8, 2012 a jury found appellant Wayne Warren guilty of Aggravated Robbery, a felony of the first degree, in violation of R.C. 2911.01. Appellant, Wayne Warren, sets forth three assignments of error:

> I. THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW
>
> TO CONVICT WAYNE WARREN OF AGGRAVATED ROBBERY;
>
> OR IN THE ALTERNATIVE, THE CONVICTION WAS AGAINST
>
> THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> II. WAYNE WARREND [sic] WAS DENIED THE EFFECTIVE
>
> ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH

AMENDMENT TO THE CONSTITUTION AND COMPARABLE

PROVISIONS OF OHIO'S CONSTITUTION.

III.   WAYNE WARREN WAS DENIED DUE PROCESS UNDER THE

LAW BECAUSE HE WAS DENIED AN ADEQUATE

PRESERVATION OF THE TRIAL COURT RECORD.

I.

STATEMENT OF FACTS

{¶ 2}  On June 6, 2011 appellant Wayne Warren and his neighbor Jeremy Waters,

borrowed a car from appellant's girlfriend, Amanda Nicholson, to drive to Londonderry,

Ohio to pick up some money purportedly owed to Mr. Waters.  Appellant and Mr. Waters

were unable to pick up any money in Londonderry.  The two men then left Londonderry

and traveled to Chillicothe, Ohio.

{¶ 3}  Mr. Waters testified that when they arrived in Chillicothe, appellant drove

to a bowling alley.  Upon arrival at the bowling alley, appellant discovered that it was

closed.  Appellant then drove to a Kmart and instructed Mr. Waters to remain in the

vehicle while he went inside the store.  According to Mr. Waters, appellant stayed in the

store for approximately five minutes.  Appellant returned to the vehicle and then drove to

another shopping mall down the street.

{¶4}  Mr. Waters testified that appellant then pulled the vehicle in front of a

woman and told him to "duck."  The back of the car was parked towards the woman, with

Mr. Waters facing away from her.   Next, Mr. Waters testified that he heard a woman

scream; but he did not see anything.  Appellant reentered the vehicle; and they left the

area.

{¶5} Carrie Mead testified that she had been shopping at Kroger with her daughter, Tyessa Mead. Carrie Mead testified that after she put the groceries inside her trunk, she proceeded to take the cart to the cart corral. At this time Tyessa Mead was getting back into the car to charge her iPod.

{¶6} According to Carrie Mead, as she was taking the cart back, a car pulled up beside her. A man stepped out behind her and said, "Could you do me a favor?" Ms. Mead then turned around and observed the man holding a knife to her stomach. As she backed away from the man, he tried to grab her purse. Ms. Mead tried to get her cell phone from her purse as she began screaming for her daughter to lock the doors of the car. When Tyessa Mead first heard her mother yelling, she got out of the car. Carrie Mead quickly told Tyessa Mead to get back in the car and lock the doors.

{¶7} Once Carrie Mead began screaming, the man got back into his car and sped away. Carrie Mead also got in her vehicle. Carried Mead and her daughter were able to observe the license place number of the car that was leaving the scene. Tyessa Mead typed the license plate number in a text message and sent it to herself in order to record it. Carrie Mead then went back into Kroger and told an employee what had happened; and an employee from Kroger called the police.

{¶8} Carrie Mead and Tyessa Mead went to the Chillicothe Police Department where Sargent Tom Cunningham interviewed them. During the interview, Carrie Mead described the man as wearing a light colored shirt and a ball cap. The Meads also gave the license plate number to authorities. The license plate number was traced through the Bureau of Motor Vehicles to Amanda Nicholson, appellant's girlfriend.

{¶9} The Vinton County Sheriff's department received the information and sent two deputies, Ethan Doerr and Pennie McCune, out to Ms. Nicholson's house. Deputy McCune testified that shortly after they arrived at Ms. Nicholson's house, appellant called Ms. Nicholson on her cell phone. Deputy McCune recognized the voice of appellant from prior interactions; and Deputy McCune asked to speak with appellant herself. Deputy McCune asked appellant his location. Appellant responded that he was not far away. Deputy McClune asked him if he could come to Ms. Nicholson's residence; and he replied that he would. Appellant asked if he would be allowed to say goodbye to his girlfriend before Deputy McCune arrested him.

{¶10} The deputies both testified that when appellant and Mr. Waters arrived, appellant was driving the car. The deputies ordered the men out of the car and searched them for weapons. The vehicle was towed and impounded. When Deputy Doerr was completing the inventory, he discovered a black handled knife in the center console underneath the parking brake lever.

{¶11} At trial, Carrie Mead was shown the knife found in the vehicle. She testified that the knife appeared similar to the one that the man was holding during the encounter in the parking lot.

{¶12} Appellant sets forth three assignments of error for review. First, he contends that the evidence presented against him at trial was insufficient as a matter of law to convict him of aggravated robbery. Next, he argues that he was denied effective assistance of counsel in violation of the Sixth Amendment to the Constitution of the United States. Finally, appellant claims that he was denied due process because of the

trial court's failure to provide the complete trial transcript. Appellee, State of Ohio asks this court to overrule appellant's assignments of error and affirm appellant's conviction.

## II.

## FIRST ASSIGNMENT OF ERROR

{¶13} In his first assignment of error, appellant argues that there was insufficient evidence that he committed the offense of Aggravated Robbery beyond a reasonable doubt. In the alternative, appellant argues that even if sufficient evidence existed to support a verdict, this Court should find the verdict to be against the manifest weight of the evidence. Appellant contends that there was no positive identification of the offender by the victim in this case. Appellant argues that Carrie Mead's description of the offender more closely matched that of Mr. Waters and not of him. In addition, appellant states that the only evidence tending to suggest that he committed the crime was the testimony of the only other suspect, Mr. Waters. According to appellant, the jury lost their way; and their verdict was a miscarriage of justice.

## Standard of Review

{¶14} The arguments concerning the "sufficiency" and the "manifest weight" of the evidence are two distinct legal concepts. *State v. Davis*, 4th Dist. No. 12CA3336, 2013-Ohio-1504, ¶ 12; *See State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). "When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. [*Thompkins*] at 386 (stating that 'sufficiency is a test of adequacy')." *Davis* at ¶ 12, citing *Thompkins* and *State v. Jenks,* 61 Ohio St.3d 259, 274, 574 N.E.2d 492 (1991). "The standard of review is

whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *Id.* citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jenks,* 61 Ohio St.3d at 273.

{¶15}  Therefore, when we review a sufficiency of the evidence claim in a criminal case, we review the evidence in a light most favorable to the prosecution.  *See State v. Hill,* 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant,* 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993).  A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion the trier of fact did.  *State v. Tibbetts,* 92 Ohio St.3d 146, 162, 749 N.E .2d 226 (2001); *State v. Treesh,* 90 Ohio St.3d 460, 484, 739 N.E .2d 749 (2001).

{¶16}  "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387. When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses.  The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve.  *E.g., State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. DeHass,* 10 Ohio St .2d 230, 39 O.O.2d 366, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Murphy,* 4th Dist. No. 07CA2953, 2008–Ohio–1744, ¶ 31. Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the jury, when

resolving the conflicts in evidence, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins,* 78 Ohio St.3d at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶17} If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *State v. Eley,* 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus. A reviewing court should find a conviction against the manifest weight of the evidence only in the "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins,* 78 Ohio St.3d at 387, quoting *Martin,* 20 Ohio App.3d at 175; *see also State v. Lindsey,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

## Analysis

{¶18} Appellant was convicted of Aggravated Robbery, a violation of R.C. 2911.01. The elements of the offense are as follows:

(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

(2) Have a dangerous ordnance on or about the offender's person or under the offender's control;

(3) Inflict, or attempt to inflict, serious physical harm on another. Considering all the evidence, we weigh whether a trier of fact could conclude beyond a reasonable doubt that appellant committed the offense of Aggravated Robbery.

{¶19}  The victim in this case, Carrie Mead, was returning a shopping cart at the corral when she turned to find a knife at her stomach and a man saying to her, "Can you do me a favor?"  A knife qualifies as a deadly weapon; and it was brandished in accordance with R.C. 2911.01.  *See State v. Sims*, 4th Dist. 10CA17, 2012-Ohio-238 ¶ 38 (demonstrating that a knife is considered a deadly weapon).  Carrie Mead also testified that the man was reaching and grabbing at her purse.  This is evidence that the appellant was using the knife to try to steal Carrie Mead's purse.

{¶20}  Next, we need to evaluate the evidence presented that tends to demonstrate that appellant was the offender in this case.  Carrie Mead and her daughter recorded the license plate number of the car driven by the offender.  The car was traced back to Amanda Nicholson, the girlfriend of appellant, who testified that her neighbor Mr. Waters and appellant borrowed the vehicle that day.  However, it was established at trial that Carrie Mead, just a few days after the incident of June 6, 2011, did not identify appellant in a photo array.  Carrie Mead did describe the offender as wearing a light colored shirt and a ball cap.  The photographs and testimony at trial established that both Mr. Waters and appellant were wearing t-shirts and ball caps.  Mr. Waters was wearing a blue cut-off t-shirt with a white ball cap, while appellant was wearing a light grey t-shirt with a red and black ball cap.

{¶21}  Mr. Waters testified that he was a passenger in the vehicle with appellant driving the entire day.  He testified that he stayed in the car while they were at the Kroger

parking lot. Appellant exited the vehicle and told him to "get down." Mr. Waters then heard a woman scream; and appellant got back into the car. Mr. Waters testified that after leaving the Kroger parking lot, appellant apologized to him saying, "Sorry that I got you in this mess."

{¶22} After examination of the evidence and elements of aggravated robbery, the verdict reached by the jury is supported by sufficient evidence. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. We now turn to examine whether the verdict is against the manifest weight of the evidence.

{¶23} Our standard of review requires us to find this to be an "exceptional case in which the evidence weighs heavily against the conviction" in order to overturn appellant's conviction. *Thompkins*, 78 Ohio St.3d at 387. In light of the evidence presented in this case, we cannot conclude that this is the "exceptional case in which the evidence weighs heavily against the conviction." Therefore appellant's first assignment of error is not well taken.

III.

SECOND ASSIGNMENT OF ERROR

{¶24} In his second assignment of error, appellant argues that he was denied the effective assistance of counsel in violation of the Sixth Amendment to the Constitution of the United States. Appellant sets forth two instances where his trial counsel was ineffective. The first occurred on cross-examination of Deputy McCune when the deputy revealed that appellant had an outstanding warrant on the day of June 6, 2011. Appellant claims a second instance occurred when his counsel failed to mitigate his sentence.

Standard of Review

{¶25} Criminal defendants have a right to counsel, including a right to the effective assistance from counsel. *See McMann v. Richardson*, 397 U.S. 759, 771, fn. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *State v. Stout*, 4th Dist. No. 07CA5, 2008-Ohio-1366, ¶21. To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998).

{¶26} "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (Citations omitted.) *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. No. 06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *See State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other.").

{¶27} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689.

Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*.  "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 4th Dist. No. 07CA11, 2008-Ohio-482, ¶ 10, citing *State v. Smith*, 17 Ohio St.3d 98, 100, 17 OBR 219, 477 N.E.2d 1128 (1985).  Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment.  *See State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 156, 524 N.E.2d 476 (1988).

{¶28}  To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different.  *State v. White*, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus (1989).  Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be affirmatively demonstrated.  *See State v. Clark*, 4th Dist. No. 02CA684, 2003-Ohio-1707, ¶ 22; *State v. Tucker*, 4th Dist. No. 01CA2592, 2002 WL 507529, *3 (Apr. 2, 2002); *State v. Kuntz*, 4th Dist. No. 1691, 1992 WL 42774, *2 (Feb. 26, 1992).

Analysis

{¶29}  First, appellant claims that his defense counsel should have prevented the prosecutor from asking Deputy McCune a certain line of questioning.  The relative testimony is as follows, first on direct examination:

[Prosecutor]:   ONCE HE HAD GOTTEN ON THE PHONE AND YOU

WERE TALKING TO HIM, COULD YOU DESCRIBE WHAT YOU

HAD TALKED ABOUT?

[McCune]:       I ASKED HIM WHERE HE WAS, HE WOULDN'T

TELL ME EXACTLY WHERE HE WAS, HE SAID HE WAS CLOSE;

NOT FAR AWAY. I ASKED HIM IF HE COULD COME TO THE

RESIDENCE, HE SAID THAT HE WOULD. I TOLD HIM THAT IT

WOULD BE IN HIS BEST INTEREST IF HE DID. HE ASKED IF HE

COULD SAY GOOD-BYE TO HIS GIRLFRIEND WHEN HE

ARRIVED, BEFORE I ARRESTED HIM.

[Prosecutor]:   SO HE ASKED YOU IF YOU WOULD LET HIM SAY

GOOD-BYE TO HIS GIRLFRIEND BEFORE HE WAS ARRESTED?

[McCune]:       YES.

[Prosecutor]:   PRIOR TO HIM MAKING THAT STATEMENT TO

YOU, HAD YOU GIVEN HIM INDICATION TO HIM THAT HE

WOULD BE UNDER ARREST WHEN HE ARRIVED AT HIS

RESIDENCE?

[McCune]:       NO, I DID NOT.

***

{¶30}  On cross-examination, Deputy McCune gave the following

testimony:

[Counsel]:      DEPUTY, I THINK YOU TESTIFIED THAT WHEN

YOU WERE SPEAKING WITH MR. WARREN ON THE PHONE, HE

SEEMED TO KNOW HE WAS GOING TO BE ARRESTED, IS THAT

CORRECT?

[McCune]:     YES, THAT'S THE WAY IT SOUNDED.

[Counsel]:     WERE YOU AWARE IF HE HAD WARRANTS OUT OF

ANY OTHER COUNTIES?

[McCune]:     NO, I WAS NOT.

[Counsel]:     AT SOME POINT IN THE CRUISER, DID HE SAY

ANYTHING TO YOU ABOUT WARRANTS?

[McCune]:     NOT THAT I RECALL.

[Counsel]:     YOU DON'T RECALL HIM TELLING YOU HE KNEW

HE HAD WARRANTS FROM ANOTHER COUNTY?

[McCune:]     NOT THAT I RECALL.

          ***

[Counsel]:     DID YOU EVER RUN A CHECK FOR WARRANTS?

[McCune]:     UM, JUST PRIOR TO CHILLICOTHE POLICE

DEPARTMENT ARRIVING. WE WENT AHEAD AND GOT THE

PAPERWORK AND STUFF READY FOR THEM AND THAT'S

WHEN I WAS AWARE THAT HE HAD OUTSTANDING

WARRANTS.

[Counsel]:     SO HE DID IN FACT HAVE OTHER WARRANTS

FROM OTHER COUNTIES?

[McCune]:     YES, HE DID?

[Counsel]:     IS IT IMPOSSIBLE THAT HE WOULDN'T HAVE

KNOWN THAT?

[McCune]:     I CAN NOT SAY THAT.

{¶31}  Appellant argues, while his statement to Deputy McCune may have been admissible under Evidence Rule 801(D)(2), evidence of the warrant was not admissible and was highly prejudicial.  In order to explain the statement, appellant claims that he was compelled to disclose the prejudicial information regarding his outstanding arrest warrant.  Appellant assigns error for ineffective assistance of counsel for failure to use proper means of excluding the testimony either by pretrial motion pursuant to Crim.R. 12(c) or by objecting to the prosecutor's line of questioning.

{¶32}  In his appellate brief, appellant admits that his statement to Deputy McCune may be admissible under Evid.R. 802(B)(2) as an admission by a party. Since he does not claim the statement to be inadmissible under the hearsay rule, we will not address it as such.  Appellant instead claims his statement is inadmissible under Evid.R. 404(B) and 403(A). Evid.R. 404(B) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Evid.R. 403(A) states: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."  First it is important to note, that the prosecution did not seek to introduce the evidence regarding the outstanding arrest warrants of the appellant.  It was appellant's trial counsel that opened the door and asked Deputy McCune questions that revealed the existence of the warrants.

{¶33} The Third District ruled on a situation similar to this case. In *State v. Fairley*, 3rd Dist. No. 05-03-41, 2004-Ohio-2616 ¶ 30, at trial, a jury had heard on three separate occasions references to the defendant's outstanding warrants. The Third District ruled that the statements "did not detail any specific prior criminal activity which would be prohibited under Evid.R. 404(B)." *Id* at ¶ 31. Further, the court explained the statements "did not attempt to show an affinity for crime"; and one disclosure "was made in response to the questions posed by [defense counsel]."

{¶34} In this case, appellant's trial counsel elicited the outstanding warrant testimony; and nothing was revealed about the specific crime charged. There was also no attempt to show appellant acted in conformity with criminal behavior by introducing the evidence of an outstanding warrant. Therefore, we do not find that the testimony would have been prohibited under Evid.R. 404(B). Furthermore, the testimony does not demonstrate substantial prejudice to appellant to warrant exclusion of the evidence under Evid.R. 403(A).

{¶35} Looking at the context of this testimony it is clear that appellant's trial counsel was using the testimony regarding the warrant as trial strategy. After Deputy McCune had testified on direct examination that appellant asked her if he could talk to his girlfriend before being arrested, defense counsel attempted to use the warrant testimony to demonstrate appellant may have had other reasons to believe he might be arrested. In proving ineffective assistance of counsel, appellant must overcome the presumption that counsel's actions might be trial strategy. We do not find appellant has effectively demonstrated an ineffective assistance of counsel claim with respect to the cross-examination of Deputy McCune.

{¶36}  Appellant also argues that his trial counsel's failure to introduce mitigating circumstances during the sentencing hearing constitutes ineffective assistance of counsel. Appellant contends that but for this error, he would have received a lesser sentence. Appellant, being convicted of a felony of the first degree, faced a sentence of three to eleven years in prison.  R.C. 2929.14(A)(1).  At the sentencing hearing, Carrie Mead gave a victim impact statement.  Afterwards counsel for appellant stated:

> I think the court is well aware of the facts of the case.  We don't believe
> that a ten year sentence, the maximum sentence, would be appropriate
> here.  My client of course, still maintains his innocence.  We will be filing
> a notice of appeal on that.  We would ask the court to come in
> considerably under the maximum sentence.

Appellant declined to add anything further when asked by the Judge.  Appellant was sentenced to eight (8) years in prison.

{¶37}  Appellee contends that appellant has failed to establish with reasonable probability that a lower sentence would have been the result if not for defense counsel's failures.  We agree.  Appellant asserts that his trial counsel should have brought to the trial court's attention that he turned himself in to authorities, cooperated with authorities, and caused no physical harm to person or property, as mitigating factors under R.C. 2929.12(C)(3) & (4).  Appellant has not demonstrated the reasonable probability of a lesser sentence if his trial counsel would have pointed out the mitigating factors. Appellant received eight years, where the maximum sentence was eleven years. Therefore, we find that appellant has not effectively proven an ineffective assistance of counsel claim.  Appellant's second assignment of error is not well taken.

IV.

THIRD ASSIGNMENT OF ERROR

{¶38}  In his final assignment of error, appellant contends that he was denied due process under the law because he was denied an adequate preservation of the trial court record.  He submits that he has a right to have the proceedings recorded pursuant to Crim.R. 22; he argues that right was violated because the trial court transcript is missing parts of the trial.  Specifically, the trial transcript is missing cross-examination of Sargent Tom Cunningham and the entire closing arguments.

Standard of Review

{¶39}  "The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980).  When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon; and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm. *Id*.

{¶40}  The Ohio Rules of Appellate Procedure provide a remedy that preserves the right to full review in situations where the record is incomplete.  An appellant may prepare a statement of the evidence or proceedings from the appellant's own recollection pursuant to App.R. 9(C), or an agreed statement of the record pursuant to App.R. 9(D).  Appellant states that he attempted to rectify the transcript, but the recording is unavailable; and there is no sufficient means to do so.  "Unfortunately, recording equipment occasionally malfunctions.  The failure of recording equipment in the trial

court does not result in prejudice per se." *State v. Ward*, 4th Dist. No. 03CA2, 2003-Ohio-5650 ¶ 28 citing *State v. Skaggs*, 53 Ohio St.2d 162, 372 N.E.2d 1355 (1978) syllabus.  Accordingly, the appellant must demonstrate prejudice as a result of the faulty equipment and resulting inadequate record.

Analysis

{¶41}  Appellant argues that Sargent Cunningham was the lead investigator in the case and one of the state's most important witnesses.  He also asserts that as a result of the inadequate transcript, he cannot show whether his counsel was ineffective during the missing testimony or closing arguments.  An appellant might be prejudiced where another assignment of error is incapable of review because of the inadequate record.  *See State v. Beltowski*, 11th Dist. No. 2006-L-032, 2007-Ohio-3372 ¶ 29.

{¶42}  In this case, however, appellant merely asserts that this Court is unable to review the missing transcript to see if his trial counsel may have committed errors.  Appellant does not allege any specific instances of error or misconduct during Sargent Cunningham's testimony or during closing arguments.  Therefore the second assignment of error, ineffective assistance of counsel, is not hindered upon review by the transcript omissions.

{¶43}  Appellant's first assignment of error dealt with the sufficiency and manifest weight of the evidence.  As stated previously, we find that the evidence is sufficient enough for a reasonable fact finder to find appellant guilty of aggravated robbery beyond a reasonable doubt.  We also determined the verdict is not against the manifest weight of the evidence.  Therefore, the omitted testimony alone does not show

the appellant was prejudiced.  We find appellant's third assignment of error is not well taken.

V.

CONCLUSION

{¶44}  After reviewing the record and the evidence in this case, we overrule all appellant's assignments of error.  The jury conviction finding appellant guilty of Aggravated Robbery is therefore affirmed.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and Abele, J.:  Concur in Judgment and Opinion.

For the Court

By:_____
Marie Hoover, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.