[Cite as *State v. Lewis*, 2015-Ohio-4303.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
|     Plaintiff-Appellee, | : | |
| | : | Case No. 14CA3467 |
| v. | : | |
| | : | DECISION AND |
| | : | JUDGMENT ENTRY |
| BENJAMIN R. LEWIS, | : | |
| | : | |
|     Defendant-Appellant. | : | Released: 10/14/2015 |

APPEARANCES:

Stephen T. Wolfe, Wolfe Van Wey & Associates, LLC, Columbus, Ohio for Appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney and Pamela C. Wells, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio for Appellee.

Hoover, P.J.

{¶ 1} Appellant-defendant Benjamin R. Lewis ("Lewis") appeals his conviction and sentence from the Ross County Common Pleas Court. A jury found Lewis guilty of one count of aggravated burglary, a felony of the first degree, in violation of R.C. 2911.11. The trial court sentenced Lewis to ten years in prison. Here on appeal, Lewis has asserted five assignments of error: (1) The trial court's failure to instruct the jury pursuant to R.C. 2923.03(D) constitutes plain error; (2) The appellant was prejudiced by ineffective assistance of counsel; (3) The jury's verdicts were against the manifest weight of the evidence; (4) The evidence presented at trial was insufficient to support the convictions; and (5) The trial court erred when it denied appellant's

motion for acquittal pursuant to Crim.R. 29. For the following reasons, we overrule those assignments of error and affirm the judgment of the trial court.

## I. Facts and Procedural Posture

{¶ 2} On April 11, 2014, the Ross County Grand Jury indicted Lewis on one count of aggravated burglary, a felony of the first degree, in violation of R.C. 2911.11. A three-day jury trial took place on September 23, 2014 through September 25, 2014. The indictment arose from a burglary that occurred on October 22, 2012. The State presented seven witnesses at trial: (1) Bernice Cochenour, the alleged victim; (2) Sergeant Roger Hyden, the responding officer; (3) Jana Bushatz; (4) Detective Shawn Roarke of the Chillicothe Police Department; (5) Amanda Lewis, Lewis's ex wife[1]; (6) Bob Drietzer, Cochenour's son; and (6) Detective John Winfield of the Chillicothe Police Department. The defense did not present any witnesses.

{¶ 3} On October 22, 2012, Bernice Cochenour, an elderly woman, was watering her front porch flowers when Jana Bushatz ("Bushatz") approached her and asked to use her phone. As Cochenour went inside to retrieve the phone, a man, who Bushatz identified at trial as Lewis, pushed Cochenour out of the doorway. Lewis then grabbed Cochenour's wrists and put them over her head. Next, Lewis went inside the house and stole Cochenour's purse, a hearing aid case, a phone, and some money. Lewis and Bushatz then left in Bushatz's car. Lewis and Bushatz then traveled to a camper owned by Amanda Lewis and her mother. Lewis and Bushatz informed Amanda Lewis about what had taken place. Thereafter, Bushatz left in her car and went home.

---

[1] Lewis and Amanda Lewis divorced in July 2014. At the time of the incident, they were married.

{¶ 4} Approximately one year later, on November 1, 2013, Amanda Lewis contacted Detective Shawn Roarke of the Chillicothe Police Department. Amanda Lewis provided Detective Roarke with information that led him to obtain a statement from Bushatz. At trial, Bushatz was the State's key witness. Bushatz identified Lewis as the perpetrator of the burglary. The police conducted a photo lineup with Cochenour but she was unable to identify anyone. Bushatz gave testimony indicating that there was never a plan to commit the burglary. She testified that she was scared and afterwards "a wreck" as a result of Lewis's actions.

{¶ 5} The jury found Lewis guilty of aggravated burglary. The trial court sentenced Lewis to ten years in prison, as well as five years post release control. Lewis then filed this timely appeal.

## II. Assignments of Error

{¶ 6} Lewis assigns the following errors for our review:

First Assignment of Error:

> THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY PURSUANT TO
>
> R.C. 2923.03(D) CONSTITUTES PLAIN ERROR.

Second Assignment of Error:

> THE APPELLANT WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF
>
> COUNSEL.

Third Assignment of Error:

> THE JURY'S VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF
>
> THE EVIDENCE.

Fourth Assignment of Error:

THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO

SUPPORT THE CONVICTIONS.

Fifth Assignment of Error:

THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION

FOR ACQUITTAL PURSUANT TO CRIM.R.29.

## III. Law and Analysis

### A. First Assignment of Error

{¶ 7} In his first assignment of error, Lewis argues that the trial court committed plain error when it failed to include the R.C.2923.03(D) jury instruction regarding the testimony of an accomplice. Lewis contends that Bushatz was an accomplice because she drove to Cochenour's residence and assisted in the burglary. Lewis argues that Bushatz's testimony was neither corroborated nor cumulative; therefore, the failure to give the instruction was plain error. Lewis requests that we reverse his conviction because the failure to instruct the jury affected the outcome of the trial.

{¶ 8} In contrast, the State argues that (1) Bushatz was not an accomplice and (2) even if she was an accomplice, Lewis has failed to demonstrate plain error. The State contends that the accomplice jury instruction was not required because Bushatz was not indicted and did not receive favorable treatment. The State also notes that defense counsel vigorously cross-examined Bushatz; and the jury received a general instruction regarding witness credibility.

{¶ 9} Lewis's trial counsel did not object or raise the issue of the accomplice jury instruction at trial. When a defendant fails to object to erroneous jury instructions, our review is limited to whether the instructions amounted to plain error. *State v. Steele,* 138 Ohio St.3d 1, 2013–Ohio–2470, 3 N.E.3d 135, ¶ 29; *State v. Mockbee,* 2013–Ohio–5504, 5 N.E.3d 50, ¶ 24

(4th Dist.); Crim.R. 52(B). "To constitute plain error, a reviewing court must find (1) an error in the proceedings, (2) the error must be a plain, obvious or clear defect in the trial proceedings, and (3) the error must have affected 'substantial rights' (i.e., the trial court's error must have affected the trial's outcome)." *State v. Dickess,* 174 Ohio App.3d 658, 2008–Ohio–39, 884 N.E.2d 92, ¶ 31 (4th Dist.), citing *State v. Hill,* 92 Ohio St.3d 191, 749 N.E.2d 274 (2001), and State v. Barnes, 94 Ohio St.3d 21, 27, 2002–Ohio–68, 759 N.E.2d 1240. "Furthermore, notice of plain error must be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Id.,* citing *State v. Landrum,* 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990), and *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "A reviewing court should notice plain error only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

{¶ 10} R.C. 2923.03(D) states the following with respect to accomplice testimony:

If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:

"The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.

It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."

{¶ 11} In the case sub judice, the trial court did not give the accomplice jury instruction pursuant to R.C. 2923.03(D). " 'Ohio courts generally look to three factors to determine whether a trial court's failure to give the accomplice instruction constitutes plain error: (1) whether the accomplice's testimony was corroborated by other evidence introduced at trial; (2) whether the jury was aware from the accomplice's testimony that [he/she] benefited from agreeing to testify against the defendant; and/or (3) whether the jury was instructed generally regarding its duty to evaluate the credibility of the witnesses and its province to determine what testimony is worthy of belief.' " *State v. Bentley,* 11th Dist. Portage No. 2004-P-0053, 2005-Ohio-4648, at ¶ 58, quoting *State v. Woodson,* 10th Dist. Franklin No. 03AP–736, 2004-Ohio-5713, at ¶ 18.

{¶ 12} Lewis asserts that Bushatz was an accomplice; however the record indicates that she was never indicted on charges in connection with this burglary. "In State v. Wickline, 50 Ohio St.3d 114, 552 N.E.2d 913 (1990), [the Ohio Supreme Court] construed former R.C. 2923.03(D), which provided: 'No person shall be convicted of complicity under this section solely upon the testimony of an accomplice * * *.' " *State v. Perez,* 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 131 quoting 134 Ohio Laws, Part II, 1866, 1961. The Court determined that "at the very least, an 'accomplice' must be a person indicted for the crime of complicity." *Id.* quoting *Wickline* at 118. Lewis attempts to argue that the language in *Perez* quotes a case interpreting a prior version of R.C. 2923.03 that is no longer effect. However, the Court in *Perez* also stated: "Although R.C. 2923.03(D) has been amended—it now requires only that the jury be instructed on how to evaluate accomplice testimony—there is no evidence that the General Assembly intended to change the meaning of the term 'accomplice.' " *Id.* at ¶ 132.

{¶ 13} Lewis contends that Ohio courts have repeatedly held that an accomplice testimony instruction is required regardless of whether the accomplice is actually indicted. Lewis

cites *State v. Taylor*, 9th Dist. Summit No. 27273, 2015-Ohio-403, among others for this proposition. "[W]hen an unindicted person who may have been an accomplice testifies, 'an accomplice instruction may be required if the witness received favorable treatment in return for the testimony.' " *Taylor* at ¶ 12, quoting *State v. Smith,* 9th Dist. Summit No. 25650, 2012-Ohio-794, ¶ 20, citing *State v. Sillett,* 12th Dist. Butler No. CA2000-10-205, 2002-Ohio-2596, ¶ 20.

> {¶ 14} Specifically, the Twelfth District Court of Appeals held in *Sillett:*
>
> The purpose of the cautionary instruction requirement is to ensure that juries are informed that the testimony of an accomplice is inherently suspect because an accomplice is likely to have a motive to conceal the truth or otherwise falsely inculpate the defendant. * * * [T]here may be rare instances in which a person who may be an accomplice is not indicted for a crime, but has motivation to lie or conceal the truth in return for their testimony. *For example, an accomplice may be offered immunity in exchange for testimony and never be indicted for the crime.* In such cases, there is reason for the witness'[s] testimony to be viewed with the same suspicion as that of an indicted accomplice.
>
> *Id* at ¶ 19. (Emphasis added).

The Ninth District Court of Appeals found such a fact pattern in *Taylor.* A witness in *Taylor* had been charged with "complicity to commit felonious assault, obstructing justice, and possession of a firearm in a vehicle, but had not yet been indicted." *Id.* The record in *Taylor* established "that [the witness] testified in compliance with his agreement with the State that he would cooperate in the prosecution of Taylor and plead guilty to a misdemeanor and, in exchange, that the State would not indict him." *Id.* at ¶ 13. The court found that it was error for the trial court to omit the accomplice instruction. *Id.* at ¶ 18. However, the court was not convinced that had the trial court

given the instruction the outcome would have been different. *Id.* Therefore, the omission of the instruction did not result in plain error. *Id.*

{¶ 15} On direct appeal, the prosecutor asked Bushatz why she waited a year to provide information to the police:

A [Bushatz]. I was told that there was a phone call made and to go ahead and just go get it all taken care of, you know, that I didn't have much choice but to go get it taken care of, you know. I was told that this was told already, so I went down and talked to the police department and told them.

Q [Prosecutor]. So when someone -- if I'm hearing you right, when someone notified you that the jig was up, you decided to come forward?

A [Bushatz]. Yes.

Q [Prosecutor]. Any other reason you waited almost a year?

A [Bushatz]. I got clean. I did have an addiction. I got clean and this is-- I don't want no more bad things in my closet, you know. I'm healthy again and that's the way I want to stay and I don't want nothing else coming out to say okay this is what, you know, what Jana did in her past. This is not Jana. Jana wasn't that person. Jana is far from that person.

{¶ 16} On cross-examination, Bushatz confirmed that she spoke to Detective Roarke in early November 2013. The relevant testimony was as follows:

Q [Defense Counsel]. Now, in early November of 2013, you went to the law enforcement center and spoke with Sgt. or Detective Roarke, correct?

A [Bushatz]. Correct.

Q [Defense Counsel]. And at that time, and I'm reading from his report, from the

recording, "Ms. Bushatz confirmed that she was hoping to avoid jail time on the

theft charge and receive immunity on any information concerning Benji Lewis'

criminal activity."

A [Bushatz]. But it didn't happen.

* * *

Q [Defense Counsel].  Okay. So what never happened was in consideration.

A [Bushatz]. Right. I took no immunity for this. I mean I'm here.

Q [Defense Counsel]. But-- I understand that. But you did ask for help on the jail

sentence and for immunity if you told them some stuff, correct?

A [Bushatz]. Yeah.

{¶ 17} During his testimony, Detective Roarke confirmed that Bushatz had asked for a

lessened sentence on a theft charge and immunity in exchange for information. Detective Roarke

testified that he told her he could not guarantee her either leniency or immunity, only that he had

the authority to speak to prosecutors. Detective Rourke could not recall whether he actually

spoke to the prosecutors about Bushatz's pending sentence. Detective Winfield also testified that

he made no promises to Bushatz. Detective Winfield indicated that Bushatz was still subject to

prosecution for her role in the burglary.

{¶ 18} The trial court gave a general jury instruction regarding the credibility of witness

testimony. The instruction was, in part, as follows:

To weigh the evidence, you must consider the credibility of the witnesses. You

will apply the test of truthfulness which you apply in your daily lives. These tests

include the appearance of each witness on the stand, his manner of testifying, the

reasonableness of the testimony, the opportunity he had to see, hear and know the things concerning which he testified, frankness or lack of it, accuracy of memory, intelligence, interest and bias, if any, together with all the facts and circumstances surrounding the testimony. Applying these tests you will assign to the testimony of each witness such weight as you deem proper.

You are not required to believe the testimony of any witness simply because he or she was under oath. You may believe or disbelieve all or any part of the testimony of any witness. It is your province to determine what testimony is worthy of belief and what testimony is not worthy of belief.

{¶ 19} Lewis insists that just because no written agreement exists for favorable treatment, it does not mean that favorable treatment was not given. However, the facts here do not reflect those in *Taylor*, 2015-Ohio-403. Here, there is no evidence of an agreement between the State and Bushatz not to indict her in return for her testimony. While it may remain a question as to why Bushatz was not indicted on any charges regarding this burglary, we cannot expand the standard for the inclusion of the accomplice jury instruction on the facts before us.

{¶ 20} Accordingly, we are not persuaded that the trial court's failure to include the R.C. 2923.03(D) jury instruction amounts to plain error. The testimony of Bushatz, Detective Winfield, and Detective Roarke gave no indication that Bushatz received favorable treatment in return for her testimony. Detective Winfield even indicated that Bushatz was still subject to prosecution for her role in this case. Lewis's trial counsel cross-examined each of these witnesses. Bushatz revealed on cross-examination that she originally came forward to police in hopes of receiving immunity and a reduced sentence on an unrelated theft charge. Therefore, the jury was aware of Bushatz's motivations for testifying, as well as the evidence that Bushatz did

not receive favorable treatment for her testimony. The trial court did give a general jury instruction to the jury on the credibility of witnesses. There is no question that the credibility issues involving Bushatz's testimony were brought to the forefront. We recognize the gravity of her testimony against Lewis and the surrounding circumstances of how she came forward to police about the matter. However, because Bushatz was not indicted for complicity nor was she provided any type of immunity in exchange for her testimony, she cannot be labeled as an accomplice with respect to a R.C. 2923.03(D) jury instruction. Therefore, we cannot find that the trial court erred when it did not include a R.C. 2923.03(D) accomplice jury instruction. Also, Lewis has failed to establish that the outcome of the trial would have been different if the instruction had been given. We do not find plain error. Lewis's first assignment of error is overruled.

### B. Second Assignment of Error

{¶ 21} In his second assignment of error, Lewis argues that his trial counsel provided ineffective assistance of counsel because he failed to object to the lack of the R.C. 2923.03(D) instruction. Lewis contends that the failure to object was not the result of any defensible tactical choice by his trial counsel. Lewis asserts that the outcome of the trial was directly affected by the failure of his counsel to object to the omission of the instruction.

{¶ 22} The State argues that since the failure to give the accomplice instruction was not plain error, Lewis's claim for ineffective assistance of counsel must fail. The State contends that even if this court determines that Bushatz is an accomplice, there is no indication that the failure to request the jury instruction would have resulted in a different outcome of the trial.

{¶ 23} To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient, and (2) that the deficient performance

prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (Citations omitted.) *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *See State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other."). In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999).

{¶ 24} In our analysis of Lewis's first assignment of error, we concluded that (1) the trial court did not err by not including the accomplice jury instruction and; (2) Lewis has not demonstrated that the outcome of the trial would have been different if the trial had included the R.C. 29223.03(D) accomplice jury instruction. Because of our previous conclusions, we find no merit in Lewis's claim of ineffective assistance of counsel. *Madrigal*, *supra*, at 389. Lewis's second assignment of error is overruled.

## C. Third Assignment of Error

{¶ 25} In his third assignment of error, Lewis asserts that the jury lost its way and created such a manifest miscarriage of justice because there was not substantial evidence that he was the assailant. Lewis argues that the jury's verdicts were against the manifest weight of the evidence.

Lewis contends that the only testimony that tended to implicate him was "the self serving testimony of an accomplice." Lewis claims that Cochenour, the person in the best position to see her assailant, described someone who does not resemble himself. Lewis calls into question Bushatz's sincerity about testifying as some sort of acceptance of responsibility.

{¶ 26} The State argues that Cochenour's and Bushatz's testimony "correlate in many important respects." The State also argues that Bushatz's testimony correlates with the statements she first gave to Detectives Roarke and Winfield. The State asserts that Bushatz received no immunity for her testimony and no assistance with her theft offense; therefore she had no incentive to lie.

{¶ 27} "When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses." *State v. Topping*, 4th Dist. Lawrence No. 11CA6, 2012–Ohio–5617, ¶ 60. "The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve." *Id.*, citing *Issa,* 93 Ohio St.3d 49 at 67, and *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. This is so because "[t]he trier of fact 'is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Pippen,* 4th Dist. Scioto No. 11CA3412, 2012–Ohio–4692, ¶ 31, quoting *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 28} "Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, clearly lost its way and created such a manifest miscarriage of justice that the

conviction must be reversed and a new trial ordered." (Quotations omitted.) *State v. Davis*, 4th Dist. Ross No. 12CA3336, 2013-Ohio-1504, ¶ 14.

{¶ 29} If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, 867 N.E.2d 493, ¶ 16 (4th Dist.). A reviewing court should find a conviction against the manifest weight of the evidence " 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *see also State v. Lindsey,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶ 30} Under a manifest weight of the evidence review, we can observe the evidence and consider the credibility of the witnesses. Lewis's argument here is focused on Bushatz's testimony. Bushatz testified to the following details. Prior to the burglary, Lewis and Bushatz worked together on a few construction jobs and odd jobs. They also scrapped materials that they could acquire. On October 22, 2012, Bushatz was driving around with Lewis looking for odd jobs. The car was running low on gas, so Lewis mentioned a lady (Cochenour) that lived in the area. Lewis had previously worked inside Cochenour's house correcting a drainage issue. Lewis asked Bushatz to go up, call her husband, and have him meet them on High Street. Bushatz let Lewis out of the car before driving up to Cochenour's house. Bushatz got out of her car and saw Cochenour already outside watering flowers on her porch. Bushatz asked Cochenour if she could use her phone. Cochenour went inside her house to get the phone. When Cochenour came out of

her house, Lewis came around the side of the residence and met her at the door. Lewis grabbed

Cochenour by the wrists and told her to stop. Lewis then entered the house.

{¶ 31} While Lewis was in the house, Bushatz testified that she was in front of her car

hysterically crying and apologizing to Cochenour. Lewis exited the house, entered the driver's

seat of Bushatz's car and drove them from the scene. Lewis stole Cochenour's purse, phone, and

other cash items. Bushatz testified that Lewis wore a handkerchief over his lower face during the

burglary. Lewis and Bushatz then traveled to Lewis's ex-wife Amanda Lewis's camper on Trego

Creek Road. Bushatz and Lewis told Amanda Lewis what had occurred. Bushatz stated that

Amanda "gave him [Lewis] all kinds of heck about it." Bushatz testified that at this point she

was a "wreck." She testified that she continued to cry hysterically and described herself as a

"basket case." Bushatz left Amanda Lewis's camper and drove home.

{¶ 32} Bushatz testified that she was not promised anything in exchange for her

testimony. Bushatz was not in contact with Lewis for six months prior to trial. Also, during

direct examination, Bushatz admitted to having a theft conviction in either 2012 or 2013.

Bushatz claimed on direct examination that she came forward to police with her information

because she became clean from her earlier drug addiction. She stated that she did not want any

more bad things in her closet. She also testified that she had nightmares about the event.

{¶ 33} Cochenour's description of the burglary was similar to Bushatz's recollection of

the events. Cochenour stated that she was on her porch watering her flowers, when a lady

(Bushatz) came to ask to use the phone. Cochenour agreed to let the woman use the phone.

When she came out of her house after retrieving her phone, Cochenour stated that the man who

"robbed" her grabbed her arms, put them over her head, and entered her house. Cochenour

testified that she did not see the woman again until the two of them were running back down the road to their car.

{¶ 34} On cross-examination, Cochenour described the burglar in the following testimony:

Q [Defense Counsel]. Okay. Now, you've told Deputy Hyden that the male who came up and held your wrists up was tall with a large grip. Do you remember telling Deputy --

A [Cochenour]. He seemed like a giant.

Q [Defense Counsel]. Right. I'll bet he did.

A [Cochenour]. But he wasn't -- certainly wasn't all that tall but he looked like it when I looked back at him.

Q [Defense Counsel]. Right. Well -- and -- but the day that you were talking to Deputy Hyden while these two people were physically-- you said a small, white female and a tall man with a large build.

A [Cochenour]. I don't know how large he was but he was just awful tall -- seemed like it.

{¶ 35} Cochenour and her son, Bob Drietzler testified regarding Cochenour's vision. Cochenour stated that her eyesight "isn't good." Drietzler described his mother as "very nearly blind." The first responder to the scene, Sergeant Roger Hyden testified that to someone of his size Lewis did not fit the description of a tall man with a large build. However, Hyden insisted that to someone of a smaller stature Lewis may fit the description.

{¶ 36} Amanda Lewis, also corroborated a portion of Bushatz's testimony regarding the events after the burglary took place. Bushatz testified that after Lewis and she left Cochenour's

residence, they went to Amanda Lewis's camper. Amanda Lewis corroborated Bushatz's testimony that the two did come to her house the day the burglary occurred. When asked if she recalled anything significant about how Bushatz was acting that day, Amanda Lewis replied: "Not. Really. I mean, No. I mean she might have been a little bit upset but I don't really-- I mean that was a long time ago." After a break in her testimony, Amanda Lewis plainly testified that Bushatz was upset at the time. Amanda Lewis did admit during re-cross examination that she had talked with the prosecutor during the break in testimony.

{¶ 37} While our standard of review allows this court to weigh the evidence and examine the credibility of the witnesses, the jury is in the best position to determine the credibility of the witnesses. *Pippen, supra*, at ¶ 31. Here, both the State and defense counsel fully examined Bushatz regarding her motivations to come forward to police, her subsequent theft conviction, her past drug addiction, and her relationship with Lewis. It is also noteworthy that she waited a year to come forward with her identification. However, some of Bushatz's testimony was corroborated by Cochenour's and Amanda Lewis's testimonies regarding the details of the burglary and the events that took place afterwards, respectively. Bushatz's testimony that she did not know this burglary was going to occur was uncontroverted. The jury was assigned with the task of determining whether the witnesses', specifically Bushatz and Amanda Lewis, testimonies were credible and worthy of belief. The jury here found Lewis guilty of aggravated burglary based upon Bushatz's testimony and identification. Considering this and weighing the evidence, we cannot find that the jury, when resolving the conflicts in evidence, clearly lost its way and created a manifest miscarriage of justice. We find, rather, that Lewis's conviction for aggravated burglary was not against the manifest weight of the evidence. Lewis's third assignment of error is overruled.

**D. Fourth Assignment of Error**

{¶ 38} In his fourth assignment of error, Lewis argues that the State did not present sufficient evidence to sustain his convictions. He reasserts his previous arguments in support of his assignment of error. Lewis requests his convictions be vacated because a retrial on counts not supported by sufficient evidence would constitute double jeopardy. The State argues that Cochenour and Bushatz testified to every element of the offense. The State contends that Cochenour could not identify her assailant because she looked down and away from him.

{¶ 39} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *Thompkins*, *supra*, at 386. "When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt." *Davis*, 2013-Ohio-1504, at ¶ 12 citing *Thompkins* at 386. "The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *Id.* citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks,* 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991).

{¶ 40} "Therefore, when we review a sufficiency of the evidence claim in a criminal case, we review the evidence in a light most favorable to the prosecution." *State v. Warren*, 4th Dist. Ross No. 12CA3324, 2013-Ohio-3542, ¶ 15 citing *State v. Hill,* 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant,* 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). "A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion the trier of fact did." *Id*. citing *State v. Tibbetts,*

92 Ohio St.3d 146, 162, 749 N.E .2d 226 (2001); *State v. Treesh,* 90 Ohio St.3d 460, 484, 739 N.E .2d 749 (2001).

{¶ 41} Lewis was tried and convicted of aggravated burglary, felony of the first degree, in violation of R.C. 2911.11 which states:

> No person, by force, stealth, or deception, shall trespass in an occupied structure
>
> or in a separately secured or separately occupied portion of an occupied structure,
>
> when another person other than an accomplice of the offender is present, with
>
> purpose to commit in the structure or in the separately secured or separately
>
> occupied portion of the structure any criminal offense, if any of the following
>
> apply:
>
> (1) The offender inflicts, or attempts or threatens to inflict physical harm on
>
> another;
>
> (2) The offender has a deadly weapon or dangerous ordnance on or about the
>
> offender's person or under the offender's control.
>
> R.C. 2911.11(A)(1) & (2).

{¶ 42} It has already been repeatedly established that Bushatz was the sole witness identifying Lewis as the perpetrator of the burglary in this case. Lewis's arguments have all concerned the credibility of Bushatz's testimony. However, "[g]enerally, arguments concerning the quality or quantity of evidence relate to the weight and the credibility of the evidence rather than its sufficiency." *State v. Baker,* 4th Dist. Scioto No. 09CA3331, 2010-Ohio-5564, ¶ 14.

{¶ 43} The evidence presented at trial demonstrates that Lewis, concealing his face with a handkerchief, grabbed Cochenour's wrists, entered her home and stole her purse, phone, and money. Photographs admitted into evidence by the State show Cochenour's bruised wrists as a

result of the burglary. Sergeant Hyden also testified to the extent of Cochenour's arm injuries, which included bruising and swelling. Sergeant Hyden attested to the authenticity of the photos that he took depicting Cochenour's injuries. Examining the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the elements of aggravated burglary. Therefore, we find that the evidence was sufficient to support Lewis's conviction of aggravated burglary. Lewis's fourth assignment of error is overruled.

### E. Fifth Assignment of Error

{¶ 44} In his fifth assignment of error, Lewis argues that the trial court erred when it overruled his motion for acquittal pursuant to Crim.R. 29. Lewis recognizes that the review of a trial court's decision on a Crim.R. 29 motion is subject to the same analysis as a sufficiency of the evidence argument. Therefore, Lewis "would reiterate all arguments raised in his first and second assignment of errors." Similarly, the State reasserts all its arguments previously set forth in its respective responses.

{¶ 45} "We review the trial court's denial of a defendant's Crim.R. 29 motion for acquittal for sufficiency of the evidence." *State v. Turner,* 4th Dist. No. 08CA3234, 2009-Ohio-3114, ¶ 17, citing *State v. Bridgeman,* 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus. Lewis's trial counsel raised the motion after the State's case in chief. The defense offered no witnesses. Therefore, all the testimony in the case had been heard when the Crim.R. 29 motion was asserted. Since we have already determined that the evidence was sufficient to support Lewis's conviction, we do not find that the trial court erred when it denied Lewis's Crim.R. 29 motion. Lewis's fifth and final assignment of error is overruled.

### IV. Conclusion

{¶ 46} Having overruled each of Lewis's assignments of error for the reasons stated above, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.: Concurs in Judgment and Opinion.
McFarland, A.J.: Concurs in Judgment Only.

For the Court

By:_____
Marie Hoover, Presiding Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.